## J. A. WUNDER ET UX. v. J. H. McLEAN ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 9, 1890—Decided April 21, 1890.

[To be reported.]

1. An owner of property cannot escape liability for an existing nuisance thereon, by demising it to a tenant and putting him in possession; such liability will not take the place of, nor in any manner affect that of the landlord: Knauss v. Brua, 107 Pa. 85; Fow v. Roberts, 108 Pa. 489.

2. For a nuisance to a dwelling on adjoining property, arising in consequence of leakage from a cess-pool on demised premises, the landlord will be responsible in damages, when the leakage was caused by its improper construction, or by a defective condition, through lack of repairs, in existence at the time the tenant took possession.

3. But if the cess-pool was not located improperly near to the neighbor's dwelling, was properly constructed, and was in good repair when the tenant took possession, and the leakage was due to subsequent neglect of the tenant to keep it in repair, the landlord will not be responsible for the injury, so long as the tenant remains in possession.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 273 January Term 1890, Sup. Ct.; court below, No. 90 September Term 1888, C. P. No. 3.

On September 5, 1888, Joseph H. Wunder and Rosanna, his wife, in right of said wife, brought trespass against James H. McLean and Catharine Craven, to recover damages for an alleged nuisance affecting the dwelling of the plaintiff's wife. Issue.

At the trial, on October 8, 1889, the court, on motion of the defendants, made an order that the jury be permitted to view the premises where the nuisance complained of was alleged to exist, and the jury accordingly examined the same. The testimony adduced tended to show the following facts:

Rosanna Wunder was the owner of a house and lot, No. 4239 Leibert street, in Manayunk, Philadelphia, and had resided there for thirty years. Catharine Craven owned and occupied the premises No. 139 Mechanic street, and the adjoining premises,

Statement of Facts.

No. 141 Mechanic street, were owned by James H. McLean, but occupied by his tenant, Edward Rooney, to whom they were first leased in 1882 or 1883. The lots of Mrs. Craven and Mr. McLean were bounded at the rear by Mrs. Wunder's property. Upon the lots of the defendants were privies, used by the occupants of the respective premises, for which there was a common cess-pool. According to the testimony for the plaintiffs, this cess-pool was less than two feet, but, according to the testimony for the defendants, more than three feet, from the wall of the plaintiffs' house.

Testimony for the plaintiffs tended to show that for about four years prior to the trial their cellar was made very offensive by foul matter coming through the cellar wall, on the side of the house next to the cess-pool of the defendants, and that the condition of the cellar was at its worst about August 6, 1888, after a violent rain storm which had flooded many cellars in the vicinity. Mrs. Wunder testified that she first complained of the nuisance in 1886. Testimony for the defendants tended to show that her first complaint was in 1888, after the storm mentioned; that soon after its occurrence, Mr. McLean, in consequence of a notice from the board of health, had the cess-pool cleaned out and its walls examined, when they were found to be in good condition; that they were not cemented, as the cleaning out was thought to be sufficient; and that after that cleaning the cellar of the plaintiffs was in good condition. The testimony disclosed the fact that there was another cess-pool near to the plaintiffs' house, located on property of one Mrs. Higgins.

The above-stated facts having been shown, the court interrupted the trial and inquired whether either of the parties had dug down to see what the actual cause of the nuisance was. Both parties said that they had not; whereupon the trial judge asked that a laborer be sent to dig, and see whether there was a leak or not, stating that he could not sustain a verdict either way until such was done, as otherwise it would be but conjecture at the best. Both sides agreeing that such should be done, the case was adjourned till Monday, October 14, 1889, at which time testimony was adduced to the effect that, during the interval, a laborer in the employ of the board of health had dug down between the cess-pool and the plaintiffs' house, and had

ascertained that the filth came from that cess-pool. Further testimony was produced to show the extent of the plaintiffs' damages.

At the close of the testimony, the court, FINLETTER, P. J., charged the jury as follows:

[From the evidence you have heard to-day, there can be no doubt that defendants are liable; it is now only a question of damages. Plaintiffs are entitled to compensation for the damages. Plaintiffs are entitled to damages to be computed from the time nuisance began.] [4]

The defendants request the court to charge:

1. That, as to the defendant, James H. McLean, there is no evidence that the premises were out of repair at the time they were rented, and the verdict must be in favor of the said James H. McLean.

Answer: Refused.[1]

2. The defendant, James H. McLean, had no right to enter to make repairs during the term of the lease to Edward Rooney, and the verdict must be for the defendant.

Answer: Refused.[2]

3. As the evidence shows that at the time of the alleged damage to plaintiff, the premises No. 141 Mechanic street were leased by the defendant, James H. McLean, to one Edward Rooney, the verdict must be for the defendant, as to the defendant, James H. McLean.

Answer: Refused.[3]

The jury rendered a verdict for the plaintiffs for $400. A rule for a new trial having been discharged, judgment was entered upon the verdict, whereupon the defendants took this appeal assigning for error:

1–3. The answers to defendants' points.[1 to 3]

4. The instruction embraced in [ ] [4]

*Mr Fred. J. Shoyer* (with him *Mr. John S. McKinlay*), for the appellants:

1. The charge of the court disregarded well-settled principles defining and discriminating between the liability of a landlord and that of a tenant, for damages to a third party, caused

Arguments.

by a nuisance on the demised premises. Primarily the tenant is always liable for such damages arising from a bad state of repair of premises of which he has possession: Bears v. Ambler, 9 Pa. 193. The statement in Long v. Fitzsimmons, 1 W. & S. 530, that the tenant is not bound to make "lasting and substantial repairs," might be confusing, had not the same judge, in Cornell v. Vanartsdalen, 4 Pa. 370, declared that the word repairs must be defined in the sense in which it is commonly understood, viz., as the restoration to a sound state of what has fallen into partial decay or dilapidation; mending or refitting. Without a provision in the lease that he shall make repairs, the landlord is under no obligation to do so: Moore v. Weber, 71 Pa. 432; Hazlett v. Powell, 30 Pa. 298; nor can he enter for that purpose without becoming a trespasser: Jackson & Gross on L. & T., §§ 627, 628. The case of Grier v. Sampson, 27 Pa. 183, does not in any way affect our position, as in that case there was no tenant in possession.

2. The cases that are most similar to the present one, in their facts and circumstances, are the following, which hold that, although the landlord is liable, if the premises are so constructed, or in such a condition at the date of the lease, that their continued use by the tenant must result to the injury of a third person, yet the landlord is not liable, where the tenant has been negligent in the use of the premises, for not making repairs necessary to abate the nuisance: Knauss v. Brua, 107 Pa. 85; Somers's App., 6 W. N. 441; Fow v. Roberts, 108 Pa. 489. Every circumstance of law and fact, in the present case, operates to relieve the landlord from liability. He had made no covenant to repair, and the tenant was bound to make repairs; though, even if there had been such a covenant, the primary liability to third persons would be on the tenant. The remedying of the nuisance is clearly within the meaning of repairs, and it was not shown that the cess-pool was in bad condition when the lease was made. No defect of construction was shown, nor can such properly be inferred. But, in any case, the question whether the landlord or the tenant was liable, should have been left to the jury.

*Mr. Emanuel J. Page* (with him *Mr. Patrick F. Dever*), for the appellees:

VOL. CXXXIV—22

Opinion of the Court.

The cess-pool was prima facie a nuisance: Wood on Nuisances, §§ 73, 124, 579; Tenant v. Goldwin, 2 Ld. Raym. 1089. A person maintaining a nuisance is liable, even though it occur without negligence or from inevitable accident: Tenant v. Goldwin, supra; Fletcher v. Rylands, L. R. 1 Exch. 265; Hodgkinson v. Smith, 4 B. & S. 228. The person erecting, as well as the person maintaining a nuisance is liable therefor: Penruddock's Case, 5 Rep. 100. The owner of real estate is liable for a nuisance thereon; it is his duty to abate it, and his tenant must suffer him to enter for that purpose: 2 Lead. Cas., Am. Law of Real Prop., 94; Grier v. Sampson, 27 Pa. 183. An owner of a house who leases it to a tenant, with a cess-pool so situated and constructed on the premises that its use must necessarily result in a nuisance to the occupants of an adjoining house, is liable to the latter in damages: Fow v. Roberts, 108 Pa. 489; Rex v. Pedley, 1 A. & E. 822; Knauss v. Brua, 107 Pa. 85; and even if the tenant had covenanted to repair: Marshall v. Cohen, 3 El. & Bl. 128. A cess-pool is a permanent fixture, and the tenant is not bound to make repairs amounting to a permanent improvement to the property: Wood on Nuisances, §§ 73, 124. The cases cited by the appellants clearly establish the latter proposition.

OPINION, Mr. JUSTICE WILLIAMS:

The fourth assignment of error complains that the learned judge of the court below took the facts wholly from the jury, leaving them nothing to do except to settle the amount of the plaintiffs' damages. Whether this was right or not depends on whether the case presented, when the evidence closed, any open questions of fact for the jury to pass upon.

The defendants owned separate but adjoining houses and lots, Nos. 139 and 141 Mechanic street. The house of the plaintiffs is on Leibert street, and the defendants' lots extend back to and adjoin that of the plaintiffs, on one side. The action is brought to recover damages alleged to have arisen from leakage from the cess-pool used in common for the privies on Nos. 139 and 141 into the plaintiffs' cellar. Mrs. Craven, one of the defendants, owned and occupied No. 139. No. 141 was owned by McLean, but was, and for several years had been, occupied by Rooney as a tenant. The plaintiffs' right to recover depended

on whether the leakage existed as alleged, and, as to McLean, on whether such leakage was due to improper construction, or defective condition when the lease was made, for which the landlord would be answerable, or to negligent use by the tenant, for which he alone should be held responsible.

By a city ordinance, it is made unlawful to locate a cess-pool within two feet of the wall of an adjoining building. This one is not within the prohibited distance, and its location may be regarded as a lawful one. If it was properly built, and in good repair when the tenants took possession, the landlord ought not to be held responsible for the consequences of his tenant's neglect. On the other hand, if the cess-pool was defectively built, or was out of repair when the tenant was put in possession, the mere fact of the tenant's occupancy, when the injury arises, will not relieve the landlord from the consequences of his own negligence. He is liable because of the defective construction or condition at and before the tenancy began, and this liability continues notwithstanding the possession of the tenant. He cannot escape liability for an existing nuisance by leasing the property to a tenant, and putting him in possession: Knauss v. Brua, 107 Pa. 85. The tenant who should use the defective cess-pool would be liable because of his use, but such liability would not take the place of, or in any manner affect, that of the landlord. This was distinctly ruled in Fow v. Roberts, 108 Pa. 489. In that case, the plaintiff was nonsuited in the court below, the court being of opinion that the plaintiff's action should have been brought against the tenant who was in possession during the time when the alleged injury was sustained. This court, however, held that, inasmuch as the cess-pool was maintained by the landlord within the prohibited distance, in violation of the city ordinance, and the testimony showed that, as often as the contents of the pool rose to a level with the bottom of the plaintiff's cellar, they began to find their way into the cellar, the plaintiff should have been allowed to go to the jury on the question of the landlord's defective construction.

In this case, the question of the character of the original construction, and the actual state of repairs when the premises passed into the possession of the tenant, was one upon which McLean had the right to go to the jury. The learned judge of the court below seems to have overlooked this question, or to

have taken its decision into his own hands. This was doubtless an inadvertence, but we do not see how the mistake can be repaired without sending the case back for a new trial.

The judgment is reversed, and a venire facias de novo awarded.