MARY E. SHRIGLEY *vs.* BOSTON SYMPHONY ORCHESTRA, INC.

Middlesex.    December 7, 1932. — June 29, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Negligence,* Of one owning or controlling real estate, Invited person.

At the trial of an action of tort against the lessee of a building, for personal injuries sustained by the mother of a member of the graduating class of an educational institution which was licensed by the lessee to use the whole building for the purpose of its graduation exercises, there was evidence that the lessee was paid a consideration by the educational institution for such use, that all the employees and attendants in and about the building were regular employees of the lessee, hired by him and on his regular payroll, that the educational institution had nothing to do with the inside arrangements of the building, that the plaintiff's son was authorized by the educational institution to invite her to the graduation exercises, and that she was injured as a result of falling in the building while attending the exercises. *Held,* that

(1) Findings were warranted that the defendant retained control of the building and that the plaintiff was within the class of persons whose presence in the building at the time of her injury was contemplated by the defendant;

(2) As such, the defendant owed to the plaintiff the duty to use reasonable care to put and keep the building in a reasonably safe condition for the purpose for which it was to be used; she was a business visitor therein with respect to the defendant.

At the trial above described, there was evidence that the plaintiff fell when she slipped on a tread of a stairway which she was descending and when a rope support at its side which she had hold of failed to give support; that the stairway had been constructed thirty years before, had marble treads, and had been in constant use since its construction; that the tread on which the plaintiff slipped was worn five eighths of an inch away from its level so that it sloped down toward the front and was "smooth" and "very shiny, slippery"; that the rope support was loose and sagged so that between its supporting rings it hung two or three inches below the position which it would have occupied if it had been taut; that the plaintiff had her hand on the rope both when she was going up the stairway and when she was going down; and that "it seemed all right" until she slipped,

but, when she slipped and grasped it more firmly, it "didn't seem to give . . . [her] any support," but "just let . . . [her] swing around," and "swung around with . . . [her]." *Held*, that the evidence of the condition of the tread together with the evidence of the condition of the rope warranted a finding that the stairway was not in a reasonably safe condition for the plaintiff's use.

TORT.  Writ dated August 11, 1930.

In the Superior Court, the action was tried before *Greenhalge*, J.  Material evidence is described in the opinion. The judge refused to order a verdict for the defendant. There was a verdict for the plaintiff in the sum of $3,965.90. The defendant alleged exceptions.

*J. H. Gilbride*, for the defendant.

*J. P. Cassidy*, (*A. J. Achin* with him,) for the plaintiff.

FIELD, J.  This is an action of tort to recover compensation for personal injuries received by the plaintiff in the defendant's building.  The defendant's motion for a directed verdict was denied and the defendant excepted.  There was a verdict for the plaintiff.

There was no error in denying the motion for a directed verdict.

Material evidence was as follows: The plaintiff on June 10, 1930, attended the graduation exercises of the Massachusetts Institute of Technology in the Boston Symphony Orchestra Building.  Her son was a member of the graduating class of the institute and was authorized by the institute to invite five guests.  He invited his mother and she attended the exercises in pursuance of this invitation. The building was owned by the Boston Music Hall Company and leased to the defendant under a written lease, with the right in the lessee to sublet.  A short time before June 10, 1930, arrangements were made between the institute and the defendant whereby the defendant, in consideration of $600 and the cost of hiring certain attendants, agreed to permit the institute to use the whole building for its graduating exercises on that day from 9 A.M. to 1 P.M. The institute did not have the keys for the building on June 10, 1930, nor did it open or close it on that day.  "All the employees and attendants in and about the building

. . . were regular employees of the defendant, hired by the defendant and on its regular payroll." The institute was charged for sixteen attendants. The defendant's assistant manager, its superintendent, six janitors and a ticket agent employed by it were in the building without the invitation of the institute. The ticket booth in the building was open and occupied by a person selling tickets for the defendant. The institute "had nothing to do with the inside arrangements of the said hall, rest room or lavatories." At about 12:40 P.M. the plaintiff went to the ladies' rest room and from that room to a lavatory on the floor above, both of which were parts of the building the institute — and the plaintiff by its invitation — had a right to use on that day under its agreement with the defendant. As the plaintiff came down the stairway from the lavatory to the rest room she slipped on a step, fell and was injured.

The evidence warranted a finding that the defendant, for a consideration, licensed (see *Johnson* v. *Wilkinson,* 139 Mass. 3) the institute to use the building for a purpose which involved the admission thereto of a large number of persons, a public or semi-public purpose, that the defendant retained control thereof, that at the time the plaintiff was injured it was being used by the institute for the licensed purpose, and that the plaintiff was within the class of persons whose presence therein was contemplated by the defendant. The defendant on such a finding owed to the plaintiff the duty to use reasonable care to put and keep the building in a reasonably safe condition for the purpose for which it was to be used. *Wendell* v. *Baxter,* 12 Gray, 494. *Currier* v. *Boston Music Hall Association,* 135 Mass. 414. *Oxford* v. *Leathe,* 165 Mass. 254. *Schofield* v. *Wood,* 170 Mass. 415. *Jordan* v. *Sullivan,* 181 Mass. 348, 350. *Johnson* v. *Zemel,* 109 N. J. L. 197. *Camp* v. *Wood,* 76 N. Y. 92. *Junkermann* v. *Tilyou Realty Co.* 213 N. Y. 404. Even if, as we do not decide, the plaintiff was a gratuitous visitor with respect to the institute, she was a business visitor with respect to the defendant since she was using the building in the right of the institute for a purpose for which the defendant was paid. The case falls outside the line of cases in which it is held that

the duty of a landlord to a guest of a tenant is to use reasonable care to keep the parts of the leased premises in his control in a condition as good as that in which they appeared to be at the time of the letting. See *Gallagher* v. *Murphy,* 221 Mass. 363, 365; *Goldsmith* v. *Ricles,* 272 Mass. 391, 396.

The evidence also warranted a finding that the defendant did not use reasonable care to put and keep the building in a reasonably safe condition for the plaintiff's use. There was evidence that the stairway was constructed in 1900 and had been in constant use since that time, that the treads thereof were marble, that the tread on which the plaintiff slipped was worn five eighths of an inch away from its level so that it sloped down toward the front and was "smooth" and "very shiny, slippery." It was agreed that at the time of the accident the tread was not wet and there was no foreign substance thereon. There was evidence also that a one-inch manila rope, covered with plush, ran along the wall and beside the stairway three feet from the angle of the treads, from the bottom to the top of the stairway, attached to the wall by means of rings fixed thereto at points six feet apart, and that it was loose and sagged so that between the rings it hung two or three inches below the position it would have occupied if it had been taut. It was fairly inferable that the rope was intended by the defendant for use as a support by persons going up and down the stairway. There was evidence that the plaintiff had her hand on the rope both when she was going up the stairway and when she was going down, and that "it seemed all right" until she slipped, but when she slipped and grasped it more firmly it "didn't seem to give . . . [her] any support," but "just let . . . [her] swing around," and "swung around with . . . [her]." We need not decide whether the evidence of the condition of the tread alone warranted a finding that the stairway was not in a reasonably safe condition. See, however, *Cromarty* v. *Boston,* 127 Mass. 329; *Bennett* v. *Jordan Marsh Co.* 216 Mass. 550; *Blease* v. *Webber,* 232 Mass. 165. But the evidence of the condition of the tread together with the evidence of the condition of the rope intended for use as a support by persons going up and down the stairway warranted a finding

that the stairway was not in a reasonably safe condition for the plaintiff's use. *Schofield* v. *Wood*, 170 Mass. 415. *Maionica* v. *Piscopo*, 217 Mass. 324. And it could have been found that seasonable examination would have disclosed to the defendant the defective condition.

It properly is not contended by the defendant that the evidence required a finding that negligence of the plaintiff contributed to the injury.

*Exceptions overruled.*