ALICE V. LYMAN v. LEONARD W. HERMANN.[1]

July 8, 1938.

No. 31,612.

[1]Reported in 280 N. W. 862.

*Child & Child* and *Junell, Fletcher, Dorsey, Barker & Colman,* for appellant.

*Ernest E. Watson* and *Van Fossen & Van Fossen,* for respondent.

HOLT, JUSTICE.

In this personal injury action the court directed a verdict for defendant, and plaintiff appeals from the order denying her a new trial.

In the village of Excelsior, fronting its main street, defendant owns three stores under one roof. One of these, about 40 feet long and nearly 15 feet wide, was let by written lease May 1, 1935, to Emil Christensen for one year, for a restaurant. Christensen sold the business to Donald Tharalson in July, 1935, and thereafter defendant accepted the monthly rent from the latter. The lease obligated the lessee at his own cost to "put and keep said premises in such condition that they will comply with all Federal, State and Municipal Laws, Charters, Ordinances and Regulations," and hold the lessor harmless for loss or damage by reason of present or future condition of the premises arising from acts or omissions of the lessee or other tenants or occupiers. The restaurant was equipped with several so-called booths on one side and a long counter on the other, separated by a passageway to the rear door, to the right of which there was a window, set at an angle at the corner. The counter extended back about two-thirds of the length of the room, behind which was the entry into the kitchen, located in the

rear part of the adjoining store. Against the rear wall to the left of the passageway was a lavatory, about five feet wide and a little over six feet long, the door to which from the passageway swings inward and toward the rear wall. There was a window in the lavatory, the lower half painted. The lavatory had the usual washbowl and seat along the wall opposite the door. The restaurant was heated by a furnace located in the basement, access to which was by a trap door in the lavatory. The trap door was two feet wide and three and a half feet long, hinged on the long side. It was so constructed that if opened after the door to the lavatory was shut or closed no one could enter the lavatory, but if the lavatory door stood open when the trap door was opened the former could not be closed again without letting down the trap door. Leading down to the furnace were very steep steps.

Shortly after two o'clock in the afternoon of February 20, 1936, plaintiff, in company with a Mr. Hewitt, entered Tharalson's restaurant to lunch. She laid her purse on a table in one of the booths which her companion entered, excused herself, and started to the rear in search of a lavatory. As she neared the rear door the open lavatory door disclosed the white fixtures inside, and, without noticing the opening caused by the lifted trap door, she entered and fell into the basement, sustaining severe injuries. Tharalson had negligently opened the trap door without closing the lavatory door and was in the basement attending the furnace, thus creating a situation which caused plaintiff's mishap. Defendant averred contributory negligence as a defense.

Both parties have presented exhaustive briefs and oral arguments. The assignments of error in this court upon rulings excluding or admitting proof do not trouble, for all that plaintiff sought to obtain from cross-examining defendant appeared fully from his subsequent testimony. There is no doubt that defendant caused the installation of the trap door and knew of its condition when the lease was made and up to the time of plaintiff's injury. That the court restricted the plaintiff's counsel in the examination of defendant when called for cross-examination under the statute to matters

within his knowledge and of which plaintiff had no proof at hand was largely a matter within the discretion of the trial court. There is nothing in the record to show abuse of discretion to plaintiff's hurt in the ruling excepted to.

Plaintiff contends (a) that defendant leased the premises for a public or semipublic use, knowing them to be dangerous and unsafe for the purpose leased; (b) that defendant knowingly leased the premises with a nuisance thereon, and should have foreseen that the negligence of lessee might cause such nuisance to injure his business patrons; and (c) that there was a violation of the statute regulating the leasing of a building for restaurant purposes not "properly plumbed."

Plaintiff does not deny the general rule of law that an owner of premises who has leased the same and surrendered possession thereof to a tenant who has covenanted to keep them in repair is not liable to the tenant or his patrons, invitees, guests, or servants for injuries received on account of any disrepair or faulty construction not hidden therein. 4 Dunnell, Minn. Dig. (2 ed.) § 5369, cases under note 39.

The sole item or article on the premises upon which plaintiff predicates the liability of defendant is this trap door in the lavatory. Is that of such faulty design or construction, where situate in premises leased for a restaurant, that the lessor, having installed the same, is liable to a patron of the lessee who is injured because of the lessee's negligent use of the trap door? Or, in other words, could a jury be permitted to find that said trap door was a nuisance or an "incipient" nuisance for which defendant is responsible to any patron of the leased premises injured thereby? The record is clear that defendant installed the trap door, knew its condition, and let the place for a restaurant. The two questions above propounded may be considered together, for, as said in Mokovich v. Independent School Dist. 177 Minn. 446, 449, 225 N. W. 292, 293: "Generally a nuisance presupposes negligence, and the maintenance thereof is usually negligence. * * * The same act, omission, or condition may and often does create a liability authorizing recovery either for

negligence or for a nuisance." Where a party has erected and let a structure "designed * * * for the use of the public, which was either structurally defective, or which was faulty, in failing to afford what, in the judgment of reasonable men, would be a proper and adequate protection to persons using it [though out of possession], then he has incurred the risk of being made responsible for occurrences resulting in injury to any one by reason of the faulty construction." Barrett v. Lake Ontario B. I. Co. 174 N. Y. 310, 315, 66 N. E. 968, 970, 61 L. R. A. 829. The structure there involved was a water toboggan slide, the railing of which around the top platform did not hinder one who slipped or stumbled from falling through. The same was the situation in Larson v. Calder's Park Co. 54 Utah, 325, 180 P. 599, 4 A. L. R. 731, where the crevices in the wall back of the target in a shooting gallery permitted glancing bullets to escape and injure a visitor to the amusement park. The court characterized the condition of the wall as a "quiescent" nuisance, and a recovery was sustained against the lessor, who knew the situation when the lease was made. In the so-called wharf or pier cases, such as Albert v. State, use of Ryan, 66 Md. 325, 7 A. 697, 59 Am. R. 159; Swords v. Edgar, 59 N. Y. 28, 17 Am. R. 295, recovery was had against the owner upon the proposition that when let the premises were to the lessor's knowledge in such disrepair as to be unsafe and in fact a nuisance. This is also in accord with Restatement, Torts, § 359, reading:

"A lessor who leases land for a purpose which involves the admission of a large number of persons as patrons of his lessee, is subject to liability for bodily harm caused to them by an artificial condition existing when the lessee took possession, if the lessor (a) knew or should have known of the condition and realized or should have realized the unreasonable risk to them involved therein."

If the evidence in this record would justify a jury in finding the trap door a nuisance or in finding that this defendant should have realized the unreasonable risk to which the existence of the trap door exposed the patrons of the restaurant, the order should be reversed, otherwise not. A trap door cannot be placed in the cate-

gory of nuisances *per se*. We find them, as well as coal holes, in sidewalks in the most congested parts of our cities. When these are properly constructed by an owner and the abutting premises let, the owner or lessor is not responsible for injuries resulting to a user of the sidewalk because of the negligent failure of the lessee or some other person properly to guard the trap door while open or to replace the cover. Korte v. St. Paul Trust Co. 54 Minn. 530, 56 N. W. 246. Trap doors were considered not nuisances in Clay v. El Dorado Hotel Co. 121 Ark. 253, 180 S. W. 977; Rider v. Clark, 132 Cal. 382, 64 P. 564; Dammeyer v. Vorhis, 63 Ind. App. 427, 113 N. E. 764; Handlon v. Copestone Temple Assn. 106 N. J. L. 362, 150 A. 386. Large buildings such as hotels, department stores, and office buildings are equipped with passenger elevators, but the owner of such buildings, who has let them thus equipped and surrendered possession to the lessee when the elevators were in good condition, cannot be held liable for injuries resulting to patrons of the lessee from such lessee or others having negligently left some door to the elevator open, permitting some patron to fall into the shaft. Again, we do not think that the jury upon this evidence could be warranted in finding that the place and manner of the installing of this trap door created an unreasonable risk to patrons of the lessee. The lavatory was well lighted; so was the passageway in front of the lavatory door; and if used as planned and constructed the trap door effectively barred all danger from anyone being injured thereby. In Harte v. Jones, 287 Pa. 37, 40, 134 A. 467, 47 A. L. R. 843, the court said:

"Where a landlord is liable for a defective construction or condition at and before the tenancy began, the liability continues throughout the tenancy: Wunder v. McLean, *supra* [134 Pa. 334, 19 A. 749, 19 A. S. R. 702]. But to cause him to be liable, the premises must be so constructed or be in such condition that in and of itself it amounts to a nuisance: Brown v. White, 202 Pa. 297, 311, 51 A. 962, 58 L. R. A. 321."

This trap door was not defective like the manhole cover in Mix v. Downing, 176 Minn. 156, 222 N. W. 913, where, however, this court

left liability of the lessor undetermined because the terms of the lease did not appear. In Lufkin v. Zane, 157 Mass. 117, 122, 31 N. E. 757, 17 L. R. A. 251, 34 A. S. R. 262, it was said:

"If the premises can be used by the tenant in the manner intended by the landlord, either as shown by the construction of the premises, or by the terms of the lease, or by other evidence, without becoming a nuisance, the landlord is not liable for the acts or neglect of the tenant which creates the nuisance."

This trap door was so placed and constructed that if used as thereby plainly indicated it was not a nuisance, but an absolute preventative of such mishaps as plaintiff suffered. Tharalson created the nuisance.

The instant case is not one where leased premises are so structurally defective that they fall or do not sustain the weight reasonably contemplated, as, for instance, warehouses, porches, platforms, elevators, and the like. Of cases dealing therewith may be cited Martin v. City of Asbury Park, 111 N. J. L. 364, 168 A. 612; Edwards v. New York & Harlem R. Co. 98 N. Y. 245, 50 Am. R. 659; Junkermann v. Tilyou Realty Co. 213 N. Y. 404, 108 N. E. 190, L. R. A. 1915F, 700; Warner v. Lucey, 207 App. Div. 241, 201 N. Y. S. 658 (affirmed 238 N. Y. 638, 144 N. E. 924); Campbell v. Elsie S. Holding Co. Inc. 251 N. Y. 446, 167 N. E. 582. Nor was this trap door designed for use by the patrons of the lessee, like equipment in a public amusement place, as in Barrett v. Lake Ontario B. I. Co. or Larson v. Calder's Park Co. *supra*.

Of the many cases cited by plaintiff which come the nearest to supporting her theory are Colorado Mtg. & Inv. Co. Ltd. v. Giacomini, 55 Col. 540, 136 P. 1039, L. R. A. 1915B, 364, and Gilligan v. Blakesley, 93 Col. 370, 26 P. (2d) 808. However, in the Giacomini case, the elevator in the hotel was defective so as to be a nuisance when the owner let the hotel to the lessee in possession when the plaintiff was injured. In the Gilligan case, in a suite of offices leased to a doctor on the second floor of the defendant's building there was a door in the outside of the wall of a room without any platform outside, and a patient or patron of the doctor, seeing

the door and thinking that outside was some receptacle for disposing of waste, opened it and stepped into space. We do not think these situations are comparable to the trap door so constructed as to afford ample protection when used as designed. That courts may sometimes extend too far the liability of a lessor for defects in premises let is seen in Bailey v. Kelly, 93 Kan. 723, 145 P. 556, L. R. A. 1916D, 1220. It is clear to us that such cases as Van Avery v. Platte Valley L. & I. Co. 133 Neb. 314, 275 N. W. 288; Shrigley v. Boston Symphony Orchestra, Inc. 287 Mass. 300, 191 N. E. 420; Lucas v. Brown (8 Cir.) 82 F. (2d) 361, are so different on the facts from the case at bar that they do not furnish a safe guide here.

Plaintiff also claims that defendant is liable under Mason Minn. St. 1927 and 1936 Supp. §§ 5903 to 5915, inclusive. We do not consider this trap door as built a violation of any provision of that law. Plaintiff says that this law requires every restaurant to be conducted in every department with strict regard to the safety of the guest and that it should be properly "plumbed," and that by § 5915 all necessary changes shall be made by the owner. However, that relates to such changes as may be ordered by the state hotel inspector, and there was no evidence that the hotel inspector had ordered any change in the trap door, and we fail to find any provision in the statutes referred to under which defendant, upon the evidence adduced, could have been found guilty.

For the purpose of this decision, we have assumed that proximate cause as well as the defense of contributory negligence were for the jury. But, since in our view there was no proof of actionable wrong or *delictum* for which defendant was liable, the court correctly directed a verdict.

The order is affirmed.

GALLAGHER, CHIEF JUSTICE (dissenting).

I am of the opinion that the case presented a question of fact for the jury. The evidence was such that the jury would have been justified in finding that the trap door, as constructed, constituted a nuisance, or at least in finding that it created an unreasonable

risk to which plaintiff and other patrons of the restaurant were exposed. A reasonably prudent person would hardly expect to find an open trap door inside the entrance to a lavatory in a public building. The fact that the owner of the building may have contemplated that the door to the entrance be closed before the trap door was opened does not absolve him from liability. The building was so constructed that the trap door could be opened and left open regardless of whether the door to the entrance was open or closed. Strangers on the premises would not contemplate such a condition of danger. I cannot subscribe to the doctrine expressed in the majority opinion.

LORING, JUSTICE (dissenting).

I agree with the views of Mr. Chief Justice Gallagher.

