IRENE K. AND ASHBY H. WOOD v. PRUDENTIAL
INSURANCE COMPANY OF AMERICA AND OTHERS.[1]

June 12, 1942.

No. 33,133.

[1]Reported in 4 N. W. (2d) 617.

552

*Hoke, Cobb & Janes,* for appellants.

*Faegre & Benson, Paul J. McGough,* and *Wright W. Brooks,* for respondents.

JULIUS J. OLSON, JUSTICE.

Two negligence actions, both arising out of the same accident, were tried together below and are similarly submitted here. The action by plaintiff wife is for recovery for personal injuries sustained by her; the husband's, to recover consequential damages, expenses incurred in attempting to cure her, etc. Both plaintiffs recovered substantial verdicts. The only defendants served and appearing at the trial were the Prudential Insurance Company and its local manager, Mr. Fawcett. Defendant Erma Louise Walby, the tenant in possession when the accident occurred, having left the state, could not be served with process. Hereafter we shall refer to the appearing defendants as "Prudential" and "Fawcett."

The Prudential is the owner of an apartment building in Minneapolis, and Fawcett has charge of it as its resident manager. The determinative facts may be thus stated: In the basement of the building is a beauty shop, which is reached by descending an outside, canopied cement stairway consisting of eight steps from

the sidewalk level to the cement areaway at the bottom. As one goes down to enter the shop, the turn is to the left. Prior to 1937, there was an eight-inch drop from the areaway to the shop floor directly in front of a door, opening inward, into the shop. Because of this situation, customers entering the shop "very often fell down," "they really would stumble." The tenant complained to Fawcett about it, and he caused to be constructed and installed a wooden platform, slightly wider than the width of the door and extending into the shop 12¼ inches beyond the threshold. This was painted black to distinguish it from the linoleum-covered floor of the shop. This change was an improvement over the former "stumbling" means provided for bringing customers into the shop, but as time went on the black paint became worn and gradually took on a grayish tinge, causing it to blend with the color of the linoleum. That was the situation as it appeared to Mrs. Wood about seven o'clock in the evening of May 15, 1939, when she went to the shop to make an appointment for the professional services of a beauty operator for the next day. She had never been there before. Having descended the stairway, she turned to the left, opened the door with her right hand, and stepped forward with her right foot. Her next step brought the heel of her left foot to the edge of the wooden platform, and as she put her full weight on the ball of that foot, thinking that she was on a solid base, she discovered, to her sorrow, that she had no support. As a result she pitched forward and fell with such force as to break her hip. Her injuries were very serious. In the twilight conditions then existing she did not discern the difference in color between the wooden platform and the floor of the shop. The doorway goes through a 22-inch masonry wall. When she opened the door, she was confronted with the bright and shiny articles of beauty equipment located a short distance away and in the direct line of her vision. There were driers and a permanent waving machine of bright chromium, a display cabinet a short distance to her right, and a manicure table on the left a few feet beyond. These were the conditions as Mrs. Wood remembers them.

She thought she was on the solid footing of the basement floor. There were no signs or indications of any kind that she was encountering an abrupt eight-inch change in floor levels beyond the entrance through which she had just come.

There are many assignments of error, but the one determinative of the question of defendants' liability here is whether, as urged by plaintiffs, the owner of premises intended to be used and used by the tenant for a public or semipublic purpose is responsible to his tenant's invitees where conditions exist rendering them unfit for the intended purpose; or whether, as contended by defendants, an owner who has surrendered possession to his tenant without an agreement to keep the premises in repair is not liable to the tenant or his patrons, invitees, guests, or servants for injuries received on account of any disrepair or faulty construction not hidden.

1. No one can deny, nor do plaintiffs, that the general rule is as stated by defendants. Our cases so hold. These are cited in 4 Dunnell, Dig. & Supp. § 5369. They contend, however, that while that is the general rule, like other rules, it is subject to certain exceptions, the one here presented being the rule applicable where premises are leased for a public or semipublic purpose. The trial court adopted plaintiffs' theory in submitting the case to the jury.

2. The applicable rule is that where premises are leased for a public or semipublic purpose, and where, at the time of making the lease, conditions exist on the premises which render them unfit for the intended purpose or constitute a nuisance, the landowner being cognizant thereof, an innocent third person rightly on the premises at the invitation of the tenant, who suffers injuries because thereof and is not himself guilty of contributory negligence, may recover damages from the owner. That, in substance, is the rule laid down and applied in Fraser v. Kruger (8 Cir.) 298 F. 693, 697, where the court said that in such circumstances liability attaches to the owner because "such third person is there at the invitation of the landlord as well as the tenant."

Similarly, in Nelson v. Hokuf, 140 Neb. 290, 299 N. W. 472, the court held:

"Where  *  *  *  premises are leased for a public or semipublic purpose, and the lessor knows at the time of leasing that a dangerous condition exists thereon which renders the premises unsafe for the public use intended, the lessor is liable for injuries sustained by patrons of such lessee who, upon invitation express or implied, are admitted to such demised premises to make use of the same for the particular purpose for which it was leased."

Authorities generally upholding this view are, amongst others, Bothby v. Yreka City, 117 Cal. App. 643, 4 P. (2d) 589; Colorado Mtg. & Inv. Co. v. Giacomini, 55 Colo. 540, 136 P. 1039, L. R. A. 1915B, 364; Olin v. Honstead, 60 Idaho, 211, 91 P. (2d) 380; 32 Am. Jur., Landlord and Tenant, § 667, p. 533, and cases under note 19; 123 A. L. R. 870, and cases there annotated; 26 Minn. L. Rev. 573, at pp. 599-600, where many cases are cited and discussed. In our case of Lyman v. Hermann, 203 Minn. 225, 229, 280 N. W. 862, 864, we said, by way of recital and discussion rather than decision:

"Where a party has erected and let a structure 'designed  *  *  * for the use of the public, which was either structurally defective, or which was faulty, in failing to afford what, in the judgment of reasonable men, would be a proper and adequate protection to persons using it [though out of possession], then he has incurred the risk of being made responsible for occurrences resulting in injury to any one by reason of the faulty construction.' "

3.  Webel v. Yale University, 125 Conn. 515, 7 A. (2d) 215, 123 A. L. R. 863, is particularly informative.  There plaintiff, a customer of a beauty shop, was injured on the premises because of a seven-inch change in floor level.  This condition existed when the shop was leased.  There, as contended by defendants here, liability on the part of the owner was sought to be avoided because public or semipublic purposes should be confined to situations where a large number of persons may be expected on the premises, such as

piers, grandstands, and the like. But the court brushed aside these limitations, saying (125 Conn. 523, 7 A. [2d] 218):

"If the liability of a landlord for defects existing when the lease was made to those who enter upon leased premises as patrons of the lessee is to be sanctioned, *as we think it should,* we are not able to see any distinction in law depending merely upon the number of persons who enter upon the premises." (Italics supplied.)

The court thought that such distinction would "make liability depend upon a test unsatisfactory and impractical to apply."

So, also, in Professor Prosser's article, "Business Visitors and Invitees," 26 Minn. L. Rev. 573, 599, the author comes to the same conclusion, saying: "No good reason for this limitation [number of patrons] ever has been suggested; and the courts have extended the landlord's liability to premises leased for use as small shops, a doctor's office, a garage, a small public meeting, and a boarding house." In each instance supporting cases are cited under footnotes. Mr. Justice Cardozo, in Junkermann v. Tilyou Realty Co. 213 N. Y. 404, 409, 108 N. E. 190, L. R. A. 1915F, 700, with his characteristic insight, rejected the fiction of invitation, saying "that the nature of the use itself creates the duty," and that therefore such an owner is as much bound to safely construct, maintain, and repair his premises as are owners of amusement parks and other like places.

4. Here, as we have seen, defendants well knew of the original dangerous condition confronting patrons who entered the shop. They undertook to remedy it. They put in the black painted platform, an obvious makeshift, since they must have known that what they did was not a solution of the problem but at most a temporary expedient. Having assumed the obligation of correcting the defect, they must bear the burden of failure to make a good job of it.

In their brief defendants concede that "it is of course the rule that if a landlord makes repairs or improvements he is liable for

his negligence in making them, though he was under no obligation to make them," citing many of our cases, including Restatement, Torts, § 362, and Prosser, Torts, p. 662, wherein the author concludes: "By entering upon an affirmative course of conduct he [the landowner] has assumed a duty toward those who may be affected by it."

5. Similar to our case in its factual setup is Young Men's Shop v. Odend 'Hal, 73 App. D. C. 354, 121 F. (2d) 857, 858. There plaintiff entered a shop through a door opening inwardly. There were two steps from the doorsill to the floor level of the shop. The top step, which was only five inches in width, was level with the doorsill. As plaintiff pushed open the door and stepped in, the heel of his right foot found support on the top step, but when he placed his weight on the ball of his foot he was thrown forward for lack of support and suffered injuries. Because of the combination of circumstances there appearing, the court said that these created "a situation which the jury might well find to involve unreasonable danger, particularly to one who previously had not used and was not familiar with the entrance."

Hanley v. James Butler, Inc. 167 App. Div. 329, 153 N. Y. Supp. 39, 40, also is a case involving an abrupt change in floor levels between two adjoining stores, one used as a grocery, the other as a butcher shop. There the difference in floor levels was 9½ inches, and there, too, the platform, 9½ inches in height, extended 13½ inches into the butcher shop. Plaintiff fell when she did not observe the change in floor levels as she was passing through a swinging door between the two shops. Reciting these facts, the court said: "This, if not obviously faulty construction constituting a trap, at least raised a question in that regard for the consideration of the jury."

We conclude that here the questions of defendants' negligence and the contributory negligence of Mrs. Wood were for the jury.

While other assignments of error are made, we find upon careful study that these do not require separate discussion. The court's instructions, read as a whole, fairly presented the ultimate

558

issues to be determined. We are not persuaded that prejudicial error appears.

Affirmed.

MR. JUSTICE STONE, absent because of illness, took no part in the consideration or decision of this case.

