CLARENCE KNUTSON v. J. M. LAMBERT, INDIVIDUALLY
AND AS SOLE TRADER *d. b. a.* TRUCK CRANE SERVICE
COMPANY, AND OTHERS.
NORTHERN STATES POWER COMPANY, APPELLANT.[1]

December 28, 1951.

Nos. 35,566, 35,572.

[1]Reported in 51 N. W. (2d) 580.

*Charles H. Weyl* and *Ramsdell, King & Carroll,* for appellant Northern States Power Company.

*Meagher, Geer & Markham,* for appellants J. M. Lambert, Truck Crane Service Company, and A. Pasma.

*Willis E. Donley,* for respondent.

LORING, CHIEF JUSTICE.

This is a companion case to No. 35,341, Nepstad v. Lambert and others (the same defendants), 235 Minn. 1, 50 N. W. (2d) 614, in which an opinion was filed August 3, 1951, and in which an application for rehearing was denied. In the case at bar, the jury returned a verdict of $100,000 in favor of plaintiff against all the defendants. The facts presented to the jury were, so far as the issues herein are concerned, practically identical with those disclosed by the record in the Nepstad case; and, to avoid repetition, reference is made to the opinion in that case for a statement of the controlling facts.

■ The first issue presented for decision is whether the loaned-servant doctrine applies to the relation of the truck crane operators to the Arnold Construction Company (hereinafter called the construction company), which engaged the truck crane and operators from Lambert and the defendant company which he managed (hereinafter referred to collectively as Lambert). On this problem, the Nepstad opinion sets out the facts substantially as they appear in the record now before us; and, for reasons announced in the Nepstad opinion, we arrive at the same conclusion as we did in that case, namely, that the men sent by Lambert to Menomonie with the truck crane were loaned servants of the construction company. Upon the facts disclosed by the record, reasonable minds functioning judicially could arrive at no other conclusion, and this question should not have been left to the jury. Therefore, Lambert, as a matter of law, is not liable for the negligence, if any, of the servants operating the crane.

■ An issue litigated (though not properly raised by pleadings) was the liability of Lambert for failure to furnish grounding equipment with the crane. In its charge to the jury, the trial court read from paragraph 2 of Order 3537, Industrial Commission of Wisconsin, General Orders on Safety in Construction (effective, July 15, 1933, reprinted, 1947) p. 51 (see, Wisconsin Red Book, Administrative Rules and Orders, 1950 [6 ed.] p. 286):

"All parts of equipment, such as steam shovels, derricks and similar machinery and devices, which are moved or put in use in the vicinity of conductors carrying electrical current, shall be grounded so far as practicable."

Since we have determined that Pasma was a loaned servant of the construction company, even if we assume that the crane should have been grounded, under the charge of the court (not excepted to by plaintiff[2]), Lambert is not liable for failure to ground it.

■ We come, then, to the question of the liability of defendant Northern States Power Company (hereinafter called the power

---

[2]This instruction and its effect will be discussed later in the opinion.

company) for negligence in the operation of its power line at Menomonie. The case against that company was submitted to the jury on two theories: (1) Common-law negligence, and (2) violation of the Wisconsin statute requiring a notice reading: "Danger—High Voltage." (Wis. Stat. 1945, § 196.67.) Such notice was required to be painted on each pole that supported wires transmitting electric current of 6,000 or more volts.[3]

We find no evidence in the record which would justify a jury in finding the power company at fault for not exercising ordinary care with reference to plaintiff commensurate with the situation. The record does not disclose that it had any reason to anticipate any unusual use of the highway near its high-tension transmission line which would expose anyone to danger from that line. The presence of the crane near the aluminum plant was not of itself sufficient to put the company on the alert for danger to anyone from the power line. It was bound to anticipate only the ordinary and usual use of the highway, unless it became aware of an anticipated unusual use.[4] The following general rule has been often announced by this court:

"* * * If a person had no reasonable ground to anticipate that his act would or might result in injury to anybody, then he was not negligent." Kayser v. Jungbauer, 217 Minn. 140, 145, 14 N. W. (2d) 337, 340.

---

[3]The statute, pleaded by plaintiff, reads as follows:

"(1) Every corporation, * * * maintaining an electric transmission line with a voltage of six thousand or more between conductors or between conductors and the ground shall place warning signs, not less than four feet nor more than six feet from the ground, upon all poles or other structures supporting such line when within * * * any city or village.

"(2) Every such sign shall be stenciled on such pole or structure in red or black letters not less than two inches high on a background of white and shall read 'Danger—High Voltage.' Such stencils shall be furnished by the commission at cost to public utility companies." Wis. Stat. 1945, § 196.67.

[4]"In the absence of pleading and proof to the contrary, it will be presumed that the common law prevails in a sister state, and that it is the same as in this state." 3 Dunnell, Dig. & Supp. § 3786, and cases cited. See, M. S. A. c. 599.

Again, in the syllabus to Tracey v. City of Minneapolis, 185 Minn. 380, 241 N. W. 390, this court interpreted its opinion as follows:

"1. It is the duty of municipalities maintaining a bridge as a part of a highway to use ordinary, reasonable care in the maintenance thereof so as to make same safe for reasonably anticipated, ordinary travel; not extraordinary and unanticipated use."

In Briglia v. City of St. Paul, 134 Minn. 97, 100, 158 N. W. 794, 796, L. R. A. 1916F, 1216, we said:

"* * * We think the city should not be required to anticipate such unusual occurrences or to guard against them. It provided a roadway safe for all ordinary hazards of travel, and in that we think it performed its full duty. The city was not negligent."

This rule of care with reference to the users of a roadway is only part of the general rule of negligence as stated by Mr. Justice Mitchell in Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641, to the effect that if injury to someone could not reasonably be anticipated there was no negligence. The rule is the same as to those transmitting power on wires. In Kieffer v. Wisconsin Ry. L. & P. Co. 137 Minn. 112, 115, 162 N. W. 1065, 1066, this court said:

"* * * The trouble is that defendant could not reasonably anticipate any accident at this point. It is plainly a case of no liability."

In Keep v. Otter Tail Power Co. 201 Minn. 475, 480, 277 N. W. 213, 216, this court said:

"The general rule applicable to those who transmit high voltage electricity is that they must exercise a degree of care to guard against injury commensurate with the danger to be apprehended but are not insurers against injury."

Bunten v. Eastern Minnesota Power Co. 178 Minn. 604, 608, 228 N. W. 332, 334, was a case involving a concrete mixer with an attached boom, which was loaded on a flatcar. Climbing up the boom, plaintiff was injured when he received an electric shock from the power lines of defendant. This court said:

"But where an electric company maintains its wires at a height at which they would not come in dangerous proximity to such persons or things as it reasonably ought to anticipate might rightfully come under or near them, it is not chargeable with negligence because someone doing an act which it had no reason to expect suffers an injury which might not have been sustained if the wires had been higher."

For other cases, see 4 Dunnell, Dig. & Supp. § 7008, and note 26.

In the case at bar, on the first day of its arrival the crane had been used only near the north end of the aluminum plant and was not on the highway until a few minutes prior to the accident, when it was taken onto the highway and moved from the north end of the building to the south end at a rate of speed not exceeding four miles an hour. This movement of the truck crane down the highway along the east side of the aluminum plant was not accompanied by hazard to anyone until the boom, for some unaccountable reason, was swung to the east some 30 feet and into electrical contact with the power line. At this point on the road, the transmission lines were six or eight feet east of the east edge of the road. They were 50 feet from the aluminum company building and 31 feet above the ground. From these figures, it can be seen that ordinary and usual users of the highway were exposed to no hazards from the transmission lines.

There is evidence in the record that prior to the time of the accident a different crane, owned by the construction company, while being used in the area, caused an arc with a power line. At that time the wires did not break, but a witness testified that there was a flash. There is no evidence in the record that the power company was aware of this occurrence, nor could a jury reasonably infer that the power company should have known where it occurred. An expert witness testified that the arc should have registered a disturbance on the instruments of the power plant, but not as to where it occurred on the line. This incident would have resulted in only a temporary disturbance, not sufficient to require or necessitate in-

vestigation, because as soon as the flash was over the line would have resumed transmission of current.

From the record, no jury reasonably could find that the power company ought to have anticipated injury to anyone[5] from the presence or use of its transmission lines, situated as they were. Therefore, there was no common-law negligence by the power company.

■ Nor is the power company liable for any alleged failure to furnish readable signs on its poles, assuming for this purpose that the power company was neglectful in this regard. To create liability, *negligence* requires not only a duty and a breach of that duty, but it requires that the act be the proximate cause of the injury suffered by plaintiff.

Plaintiff testified that he did not see any signs, but he said that he had noticed the height of the wires and the type of insulators on the poles. He said that he knew that the power lines were not the usual kind such as those near his house, but that he did not know how much voltage they carried. It is significant that the sign on the pole was required to state only "Danger—High Voltage," without a precise statement of the voltage carried.

One of plaintiff's exhibits is a photograph (exhibit E), reproduced herewith, of the area showing the poles, lines, and insulators of the power line as it passed east of the road, which was east of the aluminum plant. This photograph depicts a situation which proclaims the presence of high-tension transmission wires to all who pass along the road. The equipment shown in the photograph is so familiar to everyone in this electrical age that it is a matter of common knowledge that such equipment carries high-tension current. Certainly, to men such as those involved in the accident, the character of the current carried by this type of equipment was obvious. Plaintiff himself said that he knew it was not the ordinary line such as that which conveyed current to his house. These lines and this

---

[5]Whether there is sufficient evidence to go to the jury on the question of negligence is to be decided by the law of the forum. Cf. Franklin v. M. St. P. & S. S. M. Ry. Co. 179 Minn. 480, 487, 229 N. W. 797, 800.

equipment gave to all who passed a more conspicuous warning of danger than would the painted signs required by statute. The equipment told the whole story as to high-tension current. Therefore, any failure to provide the statutory signs was not the proximate cause of the injury to plaintiff. Since the parties knew that the lines carried high-voltage electricity, any defect in the signs could not be the natural and proximate cause of the accident. The accident did not follow from the original act complained of. See, Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641.

■ We come now to the verdict against Pasma, the operator of the truck crane. The trial court charged the jury as follows:

"* * * If you find there was no negligence on the part of the defendant Northern States Power Company, or if you find that there was negligence and that such negligence was not the proximate cause of the accident, and you should further find that Pasma was a loaned servant under full control of the Arnold Company at the time of this accident, regardless of whether Pasma was guilty of negligence or not, then plaintiff could not recover against *any of these defendants.*" (Italics supplied.)

No exception to this charge was taken by plaintiff. By this charge, the jury was instructed that, if the power company was not liable and if Pasma was a loaned servant, plaintiff could not recover against him. There being no exception to this charge by plaintiff, it became the law of the case, whether right or wrong. Clark v. C. & N. W. Ry. Co. 226 Minn. 375, 378, 33 N. W. (2d) 484, 486; 1 Dunnell, Dig. & Supp. § 404. As stated above, no other conclusions could be reached than that Pasma was a loaned servant and that the power company was free from both common-law negligence and liability for violation of the statute. It follows that under the law of the case Pasma is not liable to plaintiff.

Reversed and remanded with directions to enter judgment for all the defendants.

Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.

Mr. Justice Frank T. Gallagher took no part in the consideration or decision of this case.

