D. TORWICK v. FRANK I. LISLE AND OTHERS.

128 N. W. (2d) 330.

May 8, 1964—No. 39,066.

*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne, O. C. Adamson II,* and *William R. Nelson,* for appellant.

*Ellis L. Bursell,* for plaintiff respondent.

OTIS, JUSTICE.

This is an action to recover damages for injuries sustained by the patron of a dancehall, resulting from her heel being caught in a floor register. The jury found both the owner and the proprietors liable. The owner appeals from an order denying his motion for judgment notwithstanding the verdict or for a new trial. No appeal has been taken by the proprietors.

The premises in question consisted of a tavern and restaurant at which music was provided for dancing. An area 20 by 23 feet was covered with linoleum for use as a dance floor. Within 3 or 4 inches of one wall, a cold-air duct was constructed flush with the floor and covered by a grill 11½ inches long and 5½ inches wide. The individual openings were 1½ by ¾ inches in area.

There was evidence from which the jury could find that on the night of December 3, 1960, while the plaintiff, Dolly Torwick, was dancing on the premises, the heel of one of her shoes caught in the register and her other foot slipped on the waxed surface of the dance floor, causing her to fall and sustain the injuries for which she seeks damages.

■ Plaintiff has raised the issue of whether the relationship between the owner, Frank Lisle, and the proprietors, Lester Kittleson and Thomas Nelson, was that of landlord and tenant, as the court found, or employer and employee, as plaintiff contends.

The contract between the owner and the proprietors was designated a "Profit Sharing Employment Agreement." In it appellant, Frank Lisle, was referred to as "employer-lessor" and the proprietors as "employee-

lessees." Compensation was based on a percentage of profits or gross income with a fixed maximum per month. The trial court held that the contract created the relationship of landlord and tenant and without objection by plaintiff so charged the jury.

While it appears to us that the court was correct in reaching this conclusion and that these proprietors were not burdened with the kind of supervision and control which is ordinarily found in an employment contract, we do not find it necessary to pass on that question. The charge as given is the law of the case and cannot now be challenged by plaintiff in this appeal.[1] Consequently, if appellant is to be held liable, his responsibility is based not on the doctrine of respondeat superior but on the independent obligation of a landlord to the patrons of his tenants.

■ With the acquiescence of the parties the elements of negligence submitted to the jury related only to the construction and design of the cold-air duct by the owner and its maintenance by the proprietors. The effect of the charge was to hold any liability of the landlord to be co-extensive and identical with that of the tenants, since the verdicts submitted permitted only a finding for or against all of the defendants.

In Minnesota we have indicated approval of the rule enunciated in Restatement, Torts, § 359.[2] Where premises are leased for a public purpose and the landlord has knowledge of a condition which creates an unreasonable risk of harm to patrons, and they are thereby injured,

---

[1]Knutson v. Lambert, 235 Minn. 328, 336, 51 N. W. (2d) 580, 586.

[2]Lyman v. Hermann, 203 Minn. 225, 229, 280 N. W. 862, 864. As proposed by Tentative Draft No. 5, Restatement, Torts, § 359, would read:

"A lessor who leases land for a purpose which involves the admission of the public is subject to liability to persons who enter the land for that purpose for physical harm caused by a condition of the land existing when the lessee takes possession, if the lessor

"(a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and

"(b) has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and

"(c) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it."

the landlord is guilty of actionable negligence for having failed to remedy the condition, unless it was reasonable for him to rely on the tenant's making the premises safe before admitting the public.[3]

In the instant case the evidence would permit a finding that the owner habitually covered the floor register with a so-called jukebox to prevent dancers from coming into contact with the open grill. The jukebox was, however, equipped with rollers, and there was evidence that under the tenants' management it was moved from time to time when the floor was cleaned or when music was furnished by an orchestra. There was testimony that on the night of the accident a light fixture which would have illuminated the area where the register was located contained no bulb.

The court embodied in its charge a statement of the law taken from Nelson v. Hokuf, 140 Neb. 290, 292, 299 N. W. 472, 474, and found in Wood v. Prudential Ins. Co. 212 Minn. 551, 555, 4 N. W. (2d) 617, 619, but denied a requested instruction which would have made the landlord's liability contingent on the issue of whether he had reason to expect the lessees to admit patrons without putting the premises in a reasonably safe condition. We believe the request was proper and should have been granted.

In view of the testimony that the register was routinely kept covered at the time the tenants took possession and the permissible inference that the condition of the lighting[4] and the waxed floor, over which the landlord had no control, were factors of maintenance which a jury could find were independent acts of negligence leading to plaintiff's injury, we hold it was error not to submit forms of verdict which would permit appellant's liability and that of his tenants to be separately adjudicated.[5]

---

[3]Wood v. Prudential Ins. Co. 212 Minn. 551, 4 N. W. (2d) 617; Webel v. Yale University, 125 Conn. 515, 523, 7 A. (2d) 215, 218, 123 A. L. R. 863. See, also, 2 Harper and James, Law of Torts, § 27.16, p. 1513; Prosser, Torts (2 ed.) § 80, p. 471; Annotation, 123 A. L. R. 870.

[4]Ryberg v. Ebnet, 218 Minn. 115, 122, 15 N. W. (2d) 456, 459.

[5]At one point in the charge the court inadvertently stated: "If you determine, of course, that there was *no* negligence on the part of the defendants in maintaining this register there, *even though it was not covered,* why then you go to the question of contributory negligence, and

■ The appellant assigns as error the court's receiving over objection testimony of a previous incident in which a witness had caught her heel in the same register while dancing on the premises. Wigmore states the rule thus:

"* * * [T]he tendency of a part of a highway to make the feet trip upon it may be shown by instances of trippings. The mass of precedents dealing with the use of other injuries (or 'accidents') as evidencing the dangerousness of a place or a machine are concerned with an inference of precisely this form, *i. e.* an inference as to the *harmful tendency or capacity* of the machine, highway, building, or track, as indicated by the occurrence of such harm to *human beings in other* instances." 2 Wigmore, Evidence (3 ed.) § 458.

Minnesota follows the weight of authority in permitting testimony of similar accidents from the same inanimate cause to be received in evidence.[6] We therefore hold that it was here properly admitted.

Reversed and remanded for a new trial.

---

if you find that there was no contributory negligence on the part of the plaintiff, then you go to the question of damages." (Italics supplied.) However, no exception was taken to this obvious error and no reference made to it in the motion for a new trial.

[6]Mockler v. City of Stillwater, 246 Minn. 39, 42, 74 N. W. (2d) 118, 121; McCormick, Evidence, § 167.