Reed, Admrx., Appellant, *v.* Duquesne Light Co. et al.

326

Argued March 28, 1946. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*E. V. Buckley,* with him *Mercer & Buckley* and *Smith & Schermerhorn,* for appellant.

*Chauncey Pruger,* with him *Reed, Smith, Shaw & McClay,* for appellees.

Opinion by Mr. Justice Jones, May 27, 1946:

Ralph Thomas Reed, an employee of the American Bridge Company, was killed by electrocution on May 29, 1943, while at work on the premises of his employer. The lethal current came from overhead high tension wires of the Duquesne Light Company and was transmitted to Reed (who was on the ground) through a drop cable running over the outer end of the boom of a movable crane then operating near the wires. The wires carried a current of 22,000 volts; were uninsulated; and were elevated on poles at a height of thirty-six feet above the ground. The boom of the crane was sixty-five feet long and, at its angle of inclination, the outer end thereof was higher than the wires. The crane was the property of the Bridge Company and under the control of its employees.

At the time of the accident, the crane was being used to remove some telephone poles which were lying on the ground to the side of the wires opposite to that of the crane's position. For the purpose of the work, Reed was holding a hook and metal sling attached to the lower end of the drop cable which he was dragging away from the crane for attachment to one of the poles. With the outer end of the boom higher than the wires, the further Reed dragged the drop cable toward the pole, the closer the cable was drawn to the overhead wires. While Reed was so engaged, an upper portion of the cable came in contact with the wires or within arcing proximity of them, thereby causing the current to ground, passing through Reed's body in its course.

The decedent's widow, as his administratrix, brought suit against the Duquesne Light Company, on behalf of the decedent's estate, as well as for herself and the decedent's next of kin, claiming damages for her husband's death on the ground that it had been caused by the negligence of the Light Company. The latter impleaded the American Bridge Company as an additional defendant. The case went to trial as to both defendants and was so submitted to the jury. The jury returned a verdict in favor of the Duquesne Light Company, expressly exculpating it of negligence, and in favor of the plaintiff against the American Bridge Company in several sums. The verdict against the Bridge Company was of no avail to the plaintiff because of that company's liability for compensation for its employee's death. The plaintiff moved for a new trial of the suit as to the Duquesne Light Company. The court below refused the motion and directed that judgment be entered for the Light Company, also granting at the same time judgment n. o. v. for the Bridge Company, upon its separate motion, because of its accepted liability for compensation. From the judgments so entered, the plaintiff has appealed and assigns for error the refusal of a new trial and the court's instruction to the jury.

The appellant alleges that the learned trial judge erred in failing and refusing to charge that the Light Company was under a duty to inspect the land underneath the wires for the purpose of keeping itself informed at all times with respect to the work being carried on there by the owner of the property and of warning all persons of any consequent danger from the proximity of the instrumentalities of the work to the wires. The trial court's action in such regard constitutes the whole of the appellant's complaint. No error is assigned with respect to the admission or rejection of evidence at trial.

The power lines involved were installed by the Light Company in May 1942 over the property of the Bridge Company on orders from the latter and for its service. The appellant admits that the original construction was safe and proper. Expert testimony on both sides confirmed that the installation was of a usual and approved type. The plaintiff's expert conceded that the original installation was safe and such as he himself would have constructed under the circumstances as they existed at the time of the installation. The only change in the circumstances attending the power lines from the time of their installation until the accident to Reed was wholly unrelated to the character of the original construction or the maintenance thereof but evolved solely from the use which the Bridge Company had come to make in the meantime (i.e., between May 1942 and May 29, 1943) of the land lying underneath the lines.

When the lines were installed the Bridge Company specified the land over which they were run as an inactive area as indeed it was. From where the lines entered the property of the Bridge Company to where they ran into a transformer (protected by a wire fence thirty to forty feet square), the ground was waste land with no building or structure of any kind erected thereon and unused for any purpose. Due to the expansion of the Bridge Company's operations because of War work, a need for additional storage facilities developed. In that

situation, the Bridge Company made use of the ground under the high tension wires, using movable cranes from time to time, over a period of six months prior to the accident to Reed, for the placement and removal of materials in the locality. The Bridge Company never gave the Light Company any notice of its use of cranes near the high tension wires. Nor was there any proof that the Light Company was otherwise informed of the new use being made of the ground underneath the power lines.

We find no error in the trial court's charge that was harmful to the plaintiff who had failed to prove any negligence on the part of the Light Company as the proximate cause of Reed's death. Consequently, the Light Company's motion for a compulsory non-suit should have been granted. The court's instructions to the jury in submitting the case against the Light Company were, therefore, innocuous in any view so far as the plaintiff's rights were concerned.

The Light Company's duty was to install the high tension lines in a safe and proper manner and thenceforth to maintain them in a safe condition upon "reasonable inspection from time to time": *Matlack v. Pennsylvania Power and Light Co.*, 312 Pa. 206, 210, 167 A. 37. The propriety and safety of the original installation is admitted and there is no evidence that the Light Company failed in its proper maintenance of the lines or in its duty to inspect. Moreover, no defect or other fault in the power lines, as such, is alleged to have existed. Without some wrongful act or omission by the Light Company in respect of the lines, liability to the Bridge Company's workmen would not result: cf. *Valles v. Peoples-Pittsburgh Trust Company*, 339 Pa. 33, 41, 13 A. 2d 19. The plaintiff failed to show any facts that would justify a finding that Reed's death was the result of the Light Company's breach of a duty which it owed the decedent.

What the appellant seeks to hold the Light Company responsible for is the dangerous condition created by

the Bridge Company. Admittedly, no notice was ever given the Light Company of the use thus being made by the Bridge Company of its land lying underneath the power lines. Nor is there any suggestion that the Light Company had actual knowledge thereof otherwise. In the circumstances shown, there was no duty upon the Light Company to anticipate the danger brought about by the Bridge Company's subsequent use of cranes in the locality of the high tension wires: *Mirnek v. West Penn Power Co.*, 279 Pa. 188, 190, 123 A. 769.

None the less, the appellant contends that, inasmuch as cranes had been used in the locality of the power lines for a period of six months prior to the accident to Reed, the Light Company was bound with constructive knowledge of the dangerous condition so occasioned in conjunction with the wires. The facts of this case afford no basis for fictionally imputing to the Light Company notice of the danger created by the cranes. Before knowledge of a fault or other condition can be visited constructively, the situation must not only have existed a sufficient length of time for its due discovery but it must also be capable of ascertainment upon the inspection, observation or supervision legally required of the one sought to be bound with such knowledge. In the present instance, the position of the cranes in the locality of the high tension wires was not permanent. They were moved in and out of that locality from time to time as the Bridge Company's need for them there or elsewhere on its property indicated. Counsel for the appellant, in his colloquy with the learned trial judge just before the jury retired, conceded that an inspector for the Light Company, when upon the property of the Bridge Company for a periodic maintenance inspection of the power lines, would not have found any cranes near the lines if the cranes were then in use on some other part of the Bridge Company's property as they might well have been. To hold, in such circumstances, that the Light Company had reason to know that cranes were being used in the locality

of the power lines would be tantamount to imposing upon the Light Company a duty to keep the land underneath the lines under constant surveillance. And, such was not the Light Company's duty. With the lines properly and safely installed and maintained, there was "no duty of *continuing inspection*" upon the Light Company: *Matlack v. Pennsylvania Power and Light Co.,* supra.

In *Mirnek v. West Penn Power Co.,* supra, the structures (i.e., railroad tracks) underneath the power lines were fixed and, although changed (by elevating the tracks), the new physical condition in its relation to the power lines was constant and, therefore, observable in due course by the Power Company. However, constructive notice of the dangerous condition, thus created by "a third party", was not visited upon the Power Company, the period of the condition's existence not having been sufficiently long. But, there is even less basis in the instant case for constructively imputing to the Light Company knowledge of the presence of the cranes, not because the Bridge Company's cited use of the cranes had not been over a period of time of crucial length, but because reasonable inspection of the lines by the Light Company was not bound to disclose the dangerous condition which the Bridge Company brought about intermittently. What was said in the *Mirnek* case (p. 191) is apposite to the facts of the instant case,—"If the present complaint had been of a defect in the poles or wires, arising from the manner of construction, or because of an observable deterioration, or one arising from lapse of time, liability might be predicated thereon, if injury resulted from such neglect. But where, as here, that which had been safe, became harmful only by reason of the action of a third party, which defendant was not required to anticipate, and a sufficient time had not elapsed [or the situation was not reasonably apparent] to charge it with constructive notice of this particular kind of dangerous condition, actual notice is required, for a defendant is not obliged to seek for defects of this character, or to assume they may arise: [citing cases]".

The appellant cites and relies upon our decision in *Commonwealth Trust Company of Pittsburgh, Admr. v. Carnegie-Illinois Steel Company,* 353 Pa. 150, 44 A. 2d 594, where, although the administrator was denied a recovery because of the contributory negligence of its decedent, we held that, otherwise, the facts made out a case of liability against the company maintaining the power lines. The basis for that ruling was the fact that the defendant company had actual knowledge of the likely danger from the wires to employees (the deceased being one) of a subcontractor then working upon the property of the defendant company which owned and controlled the lines and was responsible for their location as well as their maintenance. In other cases cited by the appellant [1] the company maintaining the electric wires was bound, in the attending circumstances, to anticipate the presence of the injured person in the proximity of the electric wires at the time and place of the accident. As already pointed out, the Light Company was not so bound under the facts of the instant case: see *Mirnek v. West Penn Power Co.,* supra. Nor was the death of the plaintiff's husband ascribed to any defects in the wires whereof the Light Company could be said to have had notice, as was the situation in still other cases cited by the appellant.[2]

The judgments are affirmed.

---

[1] *Shapiro v. Philadelphia Electric Company,* 342 Pa. 416, 21 A. 2d 26; *MacDougall v. Penna. Power & Light Co.,* 311 Pa. 387, 166 A. 589; *Yeager v. Edison Electric Co.,* 242 Pa. 101, 88 A. 872; *Delahunt v. United Telephone & Telegraph Company,* 215 Pa. 241, 64 A. 515; *Daltry v. Media Electric Light, Heat and Power Company,* 208 Pa. 403, 57 A. 833; *Markovich et ux. v. Jefferson Coal and Coke Corporation,* 146 Pa. Superior Ct. 108, 22 A. 2d 65.

[2] *Fox v. Keystone Telephone Company,* 326 Pa. 420, 192 A. 116; *Grossheim v. Pittsburgh & Allegheny Telephone Co.,* 255 Pa. 382, 100 A. 126; *Fedorawicz v. Citizens' Electric Illuminating Co.,* 246 Pa. 141, 92 A. 124; and *Fitzgerald v. Edison Electric Illuminating Co.,* 200 Pa. 540, 50 A. 161.