## Durinzi, Administrator, Appellants, *v.* West Penn Power Company.

Argued September 30, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Dean D. Sturgis,* with him *Nicholas Comfort,* for appellants.

*E. J. McDaniel,* for appellee.

OPINION BY MR. JUSTICE JONES, November 10, 1947:

The suits here involved were separately instituted by the administrator and the parents of Henry Vincent Durinzi, deceased, for damages for his death by electrocution from contact with a high voltage electric current carried by overhead wires of the defendant company. Proof of negligence in relevant regard was, of course, essential to imposition of the liability asserted. The cases were tried together. At the conclusion of the trial (the defendant having rested without offering any evidence), the learned trial judge affirmed the defendant's points for binding instructions on the ground that the plaintiffs' decedent was guilty of contributory negligence as a matter of law. The court en banc for the same reason refused the motions for new trial; and, from the judgments entered on the directed verdicts, the plaintiffs took these appeals.

The following material and undisputed facts appear from the testimony adduced by the plaintiffs. On September 20, 1941, the decedent, then slightly over eighteen years old, was engaged along with four other men in painting the roof of a carpenter shop located on the premises of his employer, the Weirton Coal Company, at its Isabella Plant in Fayette County, Pennsylvania. He had been employed as a painter by the Coal Company for a period of two months and, on the date above-mentioned, had been working at the roof-painting job

for two days. The shop, a twenty-eight by ninety foot structure, was constructed of steel. The roof, which was of metal, was comb-shaped with sides sloping twenty-seven degrees from the horizontal. Two high tension wires, carrying 25,000 volts of electric current, crossed over the northwest corner of the shop. As a result of a sag in the wires at that point, their height above the comb of the roof was approximately six to eight feet. The wires were the property of the defendant company and were strung along its right of way. Signs erected on transformers near the carpenter shop and at other places on the premises bore the caution: "Stay Away—High Voltage—Danger". For some unexplained reason, Durinzi, while at work on the roof on the date specified, came in contact with the wires and received the severe shock of the high voltage. His body fell to the ground, horribly burned and distorted in limb. He died almost instantly. His contact with the wires had caused a flash and flame in the midst of which one of his fellow workers momentarily saw him standing upright on the roof, holding one of the wires in his left hand. The deceased had known of the existence of the wires, their character and the danger to anyone coming in contact with them or in close proximity to them. Indeed, on the day of the fatal accident, he had been specifically cautioned in such regard by the master mechanic in charge of the painting and had indicated his understanding of the warning by saying that he would be careful.

It further affirmatively appears by the testimony of a witness for the plaintiffs that the defendant company was not notified that the painters intended to work on the shop roof or that, by so doing, they would come in proximity to the wires.

In approving the directed verdicts entered by the learned trial judge, the court en banc cited and relied upon the case of *Haertel v. Pennsylvania Light & Power*

*Company,* 219 Pa. 640, 69 A. 282, deeming the instant case similar on its facts and, therefore, as calling by analogy for the same summary judicial disposition. The fact is, however, that the deceased's contributory negligence in the present instance stands out in the testimony adduced by the plaintiffs with greater conclusiveness than did the contributory negligence in the *Haertel* case. There, merely because there was no evidence as to how the deceased had come in contact with the electrically charged wires above the flat top roof on which he was standing and no evidence that he knew the character of the wires or their potential danger, it was held that the circumstances of the accident raised a "strong implication . . . that it was occasioned by his [the deceased's] own imprudence". Although the determinative ultimate conclusion was but an "implication", a nonsuit on the ground of contributory negligence legally imputable to the plaintiffs' decedent was none the less sustained. In the instant case, the deceased was not only aware of the presence of the wires and had actual knowledge of their character and danger but, at the moment of his contact with the current, he was seen holding in his left hand one of the high tension wires which he could not have reached except by standing upright his full (six foot) height on the comb of the roof. In this connection, it may be observed that the case of *MacDougall v. Penna. Power & Light Co.,* 311 Pa. 387, 166 A. 589, cited by the appellant, is readily distinguishable. In that case, the injured plaintiff was not charged with knowledge of the danger inherent in the defendant's power installation.

There is a further all-compelling reason why the judgments appealed from must be affirmed. The plaintiffs failed utterly to prove that the fatal accident was in any way the result of negligence on the part of the defendant. It is, of course, true that one who maintains

or operates wires charged with electricity is bound not only to know of their danger but also to use the very highest degree of care practicable in order to avoid injury therefrom to anyone who may be lawfully in proximity to the wires and who may possibly come in contact with them either accidentally or otherwise. That principle has been reiterated and followed many times: see *MacDougall v. Penna. Power & Light Co.,* supra, at p. 392, and cases there cited. While the degree of care so required of one maintaining or operating electric wires is of the highest, the concomitant duty is ". . . to install [such] lines in a safe and proper manner and thenceforth to maintain them in a safe condition upon 'reasonable inspection from time to time': Matlack v. Pennsylvania Power and Light Co., 312 Pa. 206, 210, 167 A. 37": see *Reed v. Duquesne Light Co.,* 354 Pa. 325, 329, 47 A. 2d 136.

There is not a single word of evidence in the present record to suggest that the high tension wires were faultily constructed or maintained or that a dangerous condition in respect thereto later developed which reasonable periodic inspection would have disclosed. Nor was the plaintiffs' failure to produce essential evidence of negligence a mere inadvertence. In apparent recognition of their burden, the plaintiffs offered the testimony of an expert witness as to proper construction and maintenance standards for high tension lines, but he was so obviously unqualified to give an opinion that, upon appropriate motion by the defendant, the learned trial judge struck his testimony from the record with the expressed acquiescence of counsel for the plaintiffs. There is veritably nothing in the case to suggest that the unfortunate death in suit was contributed to in any way by the defendant. The directed verdicts were therefore proper.

The judgments are affirmed.