Luketich, Appellant, *v.* Duquesne Light Company.

Argued March 19, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*E. V. Buckley,* with him *Mercer & Buckley,* for appellant.

*Chauncey Pruger,* with him *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, May 27, 1957:

Each of the plaintiffs brought suit against the Duquesne Light Company for negligently causing the death of George J. Luketich and of Albert Mrasko. The two cases were tried together, resulting in verdicts for the defendant in each case, and both will be disposed of in one opinion. Upon the refusal of each plaintiff's motion for new trial, the court entered judgment on the verdicts and these appeals followed.

The Pennsylvania Railroad Company had contracted with the Trimble Construction Company to construct a warehouse for the Railroad Company in the city of Pittsburgh, on an area between Sixteenth Street on the east, Twelfth Street on the west, and between Penn Avenue on the north and Liberty Avenue on the south. On this piece of ground was an alley called Spring Way, running east and west about midway between Penn Avenue and Liberty Avenue. The electric wires of the Duquesne Light Company were located along this alley. Before the warehouse could be built the area had to be cleared of buildings and of the lines of the Duquesne Light Company which had supplied electricity to consumers.

The Duquesne Light Company received its orders for removal of lines from the Pennsylvania Railroad Company, but had nothing to do with the contract between the Railroad Company and the Trimble Construction Company. The Light Company removed its electric wires, poles and facilities from time to time as directed by the Railroad Company, and moved westward as the work progressed from Sixteenth Street to Twelfth Street.

On June 16, 1950, the Duquesne Light Company, having completed all the work the Pennsylvania Railroad Company had ordered it to do, removed the poles which had been taken down, and its foreman told the construction engineer of the Trimble Construction Company that the Duquesne Light Company was finished with the work. The foreman received his approval therefor, and left the job.

The two decedents were members of a construction gang of steel workers employed by the Trimble Construction Company to erect the warehouse which work had continued from some time in June, 1950, to the date of the accident on August 31, 1950.

On this latter date the decedent, Mrasko, in helping to erect a 20 foot angle iron by means of a long boom crane, solely under the authority of the Trimble Construction Company, caused the tag line thereof to come in contact with an overhead electric wire of the Duquesne Light Company running along Twelfth Street. This wire was charged, and the current passed through the tag line and crane, killing Mrasko and his fellow employe, Luketich, who was working nearby. Both of these men were experienced workmen and had been warned to stay away from overhead electric wires. Indeed, just before the accident a fellow workman, Keslar, called a warning, "Look out, Abe," to Mrasko.

The Duquesne Light Company had no knowledge of the dimensions of the proposed warehouse, the kind of construction thereof, the distance of the walls from the building line, nor any similar details. All of these matters were exclusively between the Trimble Construction Company and the Pennsylvania Railroad Company.

The Pennsylvania Railroad Company project was entirely to the east of Twelfth Street, and the Duquesne Light Company was still servicing customers west of Twelfth Street, and had no reason or right to discontinue service to them.

There was no proof that the Duquesne Light Company had been on the premises in question within the two and one-half months preceding the accident. During all of this time, the Trimble Construction Company had been proceeding with the construction work. Nor was there proof that the defendant had ever been asked to de-energize the wires on Twelfth Street, or any indication that the wires were not still in use by it to supply its customers. The plans and instructions between the Trimble Construction Company and the Pennsylvania Railroad Company indicated no reason

to remove or change any electric wires on Twelfth Street.

As we have seen, the defendant had no actual notice of the activities engaged in by the Trimble Construction Company—all of these being between the Construction Company and the Railroad Company. The Light Company's lines were necessary for the supply of electricity to its customers, and it had no reason to remove the wires until notified that it would be necessary or proper because of the work being performed. *Reed v. Duquesne Light Co.*, 354 Pa. 325, 329, 330, 47 A. 2d 136, is particularly applicable here: "The Light Company's duty was to install the high tension lines in a safe and proper manner and thenceforth to maintain them in a safe condition upon 'reasonable inspection from time to time' . . . The plaintiff failed to show any facts that would justify a finding that [the decedent's] death was the result of the Light Company's breach of a duty which it owed the decedent." There, as in this case, the Construction Company gave no notice to defendant "of its use of cranes near the high tension wires," and, "In the circumstances shown, there was no duty upon the Light Company to anticipate the danger brought about by the . . . [Construction Company's] subsequent use of cranes in the locality of the high tension wires."

Nor was there any evidence to charge the defendant with constructive notice of such duty. To do so would require that the condition exist "a sufficient length of time for its due discovery. . ." and that it "be capable of ascertainment upon the inspection, observation or supervision legally required. . ." of defendant: *Reed v. Duquesne Light Co.*, supra. The defendant could not be required constantly to watch over its lines to discover the temporary use by the Construction Company of the lands upon which defendant's lines were located;

nor can the defendant be held to constructive notice of the wrongful acts of the third party in not guarding against the obvious danger created through such third party's own acts.

Since defendant was entitled to a nonsuit or binding instructions, it is not necessary to consider plaintiffs' assignments of trial errors. Each of the judgments is therefore affirmed.

Mr. Justice MUSMANNO dissents.