**Arlo WEISSER, Individually and as Trustee of the North Dakota Workmen's Compensation Bureau, Appellant,**

v.

**OTTER TAIL POWER COMPANY,**
Appellee.

No. 17129.

United States Court of Appeals
Eighth Circuit.

June 5, 1963.

J. P. Dosland, of Dosland & Dosland, Moorhead, Minn., for appellant; Lanier, Knox & Shermoen, and Eugene A. Kruger, Fargo, N. D., with him on the brief.

J. Gerald Nilles, of Nilles, Oehlert & Nilles, Fargo, N. D., for appellee.

Before SANBORN and BLACKMUN, Circuit Judges, and STEPHENSON, District Judge.

STEPHENSON, District Judge.

This appeal is from a judgment for the defendant entered on a directed verdict. The appellant brought this action individually and as trustee of the North Dakota Workmen's Compensation Bureau against the Otter Tail Power Company, the distributor of electricity through the power lines which were involved in this accident. Jurisdiction is based upon diversity of citizenship.

The appellant was an employee of Collins Construction Company, a highway contractor, engaged in resurfacing Highway #3. At the time of the accident the construction company was setting up a portable asphalt plant*200 to 300 feet east of said highway. This plant site was a ten acre plot of farm land away from any heavily populated area. At the time of the accident, the contractor's crew was in the process of removing a large smokestack from a "low-boy". In order to remove this smokestack it was necessary to engage the services of a truck with a boom on it which could be used for lifting. A chain was fastened to the smokestack and secured to the cable on the boom. The plaintiff was stationed at one end of the smokestack and the foreman of the crew was at the other end steadying the smokestack. It was also the foreman's duty to give directions to the driver of the boom truck by hand signals. After so unloading this smokestack, and while attempting to position the smokestack in order to set it on the ground under the power lines, the boom touched the defendant's power lines permitting an electrical current to pass though the cable, chain, smokestack and into appellant's body. From this electrical shock the appellant suffered severe injuries.

Defendant's power line is located on the east side and parallel to U. S. Highway 3. At the point of the accident the line was 29 feet six inches from the ground. The line consists of three wires each carrying 24,000 volts. It was stipulated that this line was constructed in compliance with the safety rules for the installation and maintenance of electric supply lines as prescribed by the United States Department of Commerce, popularly referred to as the National Electric Safety Code, which rules have been adopted by the Public Service Commission of the State of North Dakota for construction in North Dakota. It was further stipulated that there was no claim of a construction defect nor was there a claim that these particular lines should have been insulated.

There is no evidence that the defendant had ever been notified of the work under these power lines although there is evidence that the defendant's manager in the area had knowledge that the resurfacing project was to take place that spring and had seen equipment stored near the accident scene. It is also noted that it would have been possible for the defendant to have de-energized the wires in this area without disrupting the electrical service to any of the defendant's customers.

The question before the trial court was whether there was sufficient evidence of negligence on the part of the defendant to raise a jury question, that is, upon application of the appropriate law could reasonable men have differed in the results because of a factual dispute. The trial court at the close of all the evidence sustained appellee's motion for a directed verdict, ruling there was "no evidence whatever of negligence on the part of the

defendant." Appellant urges that the trial court erred in this ruling.

This being a diversity case, the applicable law is that of a state, there seems to be no question, and none has been raised, but that the state law to be applied is the law of North Dakota.

The only North Dakota case cited by either party on the question of negligence is Olson v. Cass County Electric Cooperative, Inc., 1959, 94 N.W.2d 506. In that case the North Dakota Supreme Court affirmed the district court's denial of defendant's motion for a judgment notwithstanding the verdict. In the Olson case a pole bearing electric wires broke upon being bumped by the plaintiff's farm equipment. The evidence showed that the pole had been affected by shell rot with the result that the sound wood had been reduced from over six inches to four or five inches at the point of the breakage. The defendant in that case had no regular policy of inspecting poles other than observation by employees while working on other jobs. The court states that a distributor of high voltage electricity although not an insurer has a duty of erecting and maintaining its transmission lines with the care commensurate with the dangers involved and that such care includes reasonable inspection. Since the negligence involved is primarily one of failure of reasonable inspection, this case is of little help to us. In the case presently before us there is no claim of any defect in the construction of the lines.

The question here is one of the duty of suppliers of electricity in North Dakota to maintain their power lines in a foreseeably safe condition. With no direct statements from the North Dakota Supreme Court before him, it was the duty of the district judge to rule on the law in accordance with his prediction as to how the North Dakota Supreme Court would rule. Village of Brooten v. Cudahy Packing Co., 8 Cir., 1961, 291 F.2d 284, 288; National Bank of Eastern Arkansas v. General Mills, Inc., 8 Cir., 1960, 283 F.2d 574, 576.

This court as a rule accepts the views of the trial court as to doubtful questions of local law, including the adequacy of evidence to make a case for the jury. Anthony v. Louisiana & Arkansas Railway Co., 8 Cir., 1963, 316 F.2d 858; Homolla v. Gluck, 8 Cir., 1957, 248 F.2d 731, 733; Northern Liquid Gas Co. v. Hildreth, 8 Cir., 1950, 180 F.2d 330, 336. In our review of doubtful questions of state law we do not determine whether the trial court has reached a correct conclusion but only determine whether it has reached a permissible one. Village of Brooten v. Cudahy Packing Co., supra; Cannon v. Travelers Indemnity Co., 8 Cir., 1963, 314 F.2d 657, 664. There is ample authority to support the legal position which was taken by the district judge. In Hale v. Montana-Dakota Utilities Co., 8 Cir., 1951, 192 F.2d 274, 276, this court said: "Negligence to be actionable must be such that the injury complained of might reasonably have been foreseen or anticipated." In the Hale case the plaintiff was injured when a surveying rod which he was carrying came in contact with the defendant's electrical transmission lines. The wires at that point were 14 feet 7 inches above the ground. A directed verdict was sustained notwithstanding the fact that there was evidence that the practice among electric companies required a minimum clearance of 17 feet. It was said that electrical service companies "need not guard against that which a reasonably prudent person under the circumstances would not anticipate as likely to happen."

It is well established that the law does not charge as negligence an act which causes injury unless the consequences of the act could have reasonably been foreseen. The defendant had a duty to keep the wires secured in a high enough place to keep the premises safe from the usual and customary use and any use that was likely to occur. It was not its duty to keep it safe from all uses—just for reasonably foreseeable uses. See also American General Insur-

ance Co. v. Southwestern Gas & Electric Co., 5 Cir., 1940, 115 F.2d 706.

A Court of Appeals of Ohio in Bates v. Cleveland Electric Illuminating Company, 8 Dist., 1961, Ohio App., 171 N.E. 2d 548, summarized the precedent in that state in holding that a directed verdict was proper in a case very similar to the one now before us. The court quotes with approval the following language from Hall v. Lorain-Medina, 1957, 104 Ohio App. 278, 284, 148 N.E.2d 232, 236:

"We think that the law does not require a person who maintains a high-voltage electric wire, under the conditions found in this case, to anticipate at his peril every possible circumstance under which some person might make contact with this wire."

The Supreme Court of Pennsylvania likewise has followed the position that there is no duty on a light company to anticipate the danger that results from the use of cranes in the locality of their wires. Luketich v. Duquesne Light Co., 1957, 389 Pa. 87, 132 A.2d 268. The court there held that where there was no actual notice given to the light company, the company would not be held to constructive notice unless the condition existed for " 'a sufficient length of time for its due discovery' * * *. The defendant could not be required constantly to watch over its lines to discover the temporary use by the construction company of the lands upon which the defendant's lines were located."

■■ The facts in the instant case show that the defendant was not given notice of the construction project nor was it asked to de-energize the lines. In the Luketich case the construction company had been on the premises doing construction work for two and one-half months; in the present case the crane had been on the site for eight days and had only been used for three or four hours of actual work. The plaintiff attempted to show actual notice from the testimony of the defendant's manager who had passed the accident site five

days before the accident while on a trip to another town. There is no evidence, however, that the manager knew an asphalt plant would be erected and the evidence shows that he had never seen the crane involved. The manager's knowledge was limited to the fact that the resurfacing project had started, that parts of an asphalt plant were stored at a point one or two miles south of the accident site in a field 200 or 300 feet from the highway and that there were some gravel trucks hauling gravel in the area. Upon this evidence the trial judge was justified in finding that there was no knowledge on the part of the defendant such that they could be charged with the foreseeability of the accident.

In a Minnesota case similar to the present case it was said:

"The record does not disclose that it had any reason to anticipate any unusual use of the highway near its high-tension transmission line which would expose anyone to danger from that line. The presence of the crane near the aluminum plant was not of itself sufficient to put the company on the alert for danger to anyone from the power line. It was bound to anticipate only the ordinary and usual use of the highway, unless it became aware of an anticipated unusual use. The following general rule has been often announced by this court: ' * * * If a person had no reasonable ground to anticipate that his act would or might result in injury to anybody, then he was not negligent.' Kayser v. Jungbauer, 217 Minn. 140, 145, 14 N.W. 2d 337, 340." Knutson v. Lambert, 1951, 235 Minn. 328, 51 N.W.2d 580, 583.

In Burns v. Carolina Power & Light Co., 4 Cir., 1951, 193 F.2d 525, 529, holding that the evidence was not sufficient to show negligence on the part of the defendant, the court said: "The power line was constructed and maintained in accordance with the requirements of the State. The power Company had no knowledge, information or reason to be-

'lieve that employees of the brick yard would move a crane under their transmission line and raise the boom without bothering to look to see where they were working or what would be the result."

In the Burns case the crane had been in operation at the point of the accident for "a few weeks" prior to the accident. The court did not mention that this may have been sufficient to find implied notice. The court emphasized that there was no necessity for the crane to be operated beneath the power line. Likewise in the present case the evidence shows that it was not necessary to place the crane close to the wires. The crane was being used to remove the smokestack from the low-boy in order that a gear box could be taken off the low-boy. The boom truck backed up to the low-boy, lifted the smokestack, moved in a north-easterly direction away from the low-boy and power line and then backed up to the power line in order that the smokestack could be stored in the area under the power line. The uncontroverted testimony is that the smokestack could as well have been stored elsewhere on the ten acre tract.

To the same effect, it was held in Manaia v. Potomac Electric Power Company, D.Md.1958, 163 F.Supp. 671, that a motion for judgment notwithstanding the verdict should be granted where there was no foreseeability of the misuse of a crane. The court citing American General Ins. Co. v. Southwestern Gas & Elec. Co., 5 Cir., 1940, 115 F.2d 706 said:

> "[K]nowledge of proposed road improvements does not impose an obligation to warn of the danger of wires, or to anticipate that a crane would be operated in dangerous proximity to them." 163 F.Supp. at 681.

But see Chatfield v. New York State Gas & Electric Corp., 1944, Sup., 57 N.Y.S.2d 406, affirmed, 1945 App.Div. 57 N.Y.S.2d 455.

Numerous other cases have been cited from other jurisdictions, some apparently contrary to this case and others clearly distinguishable on the facts. It is not, however, our duty to weigh the cases and tell North Dakota what position to take on this type of case. We hold that the district judge from North Dakota took a permissible position.

It is therefore unnecessary to pass on other questions raised on appeal.

Affirmed.