Antonio **GUGLIELMO**, Administrator of
the estate of Salvatore Guglielmo, also
known as Sam Guglielmo, Plaintiff,

v.

**SCOTTI & SONS, INC.**, a corpora-
tion, et al., Defendants.

**Civ. A. No. 69–585.**

United States District Court,
W. D. Pennsylvania.

Feb. 8, 1973.

See also, D.C., 311 F.Supp. 722.

Weaver & Hammer, Pittsburgh, Pa., for plaintiff.

Brandt, Riester, Brandt & Malone, Pittsburgh, Pa., for Scotti & Sons, Inc.

Weis & Weis, Pittsburgh, Pa., for West Penn Power Co.

Peacock, Keller, Yohe & Day, Washington, Pa., for other defendants.

## OPINION

SCALERA, District Judge.

Salvatore Guglielmo was killed when the boom of his brick truck touched or came close to power lines maintained by defendant West Penn Power Company upon property owned by defendants Robert and Esther Hammel. At the time of his death decedent was delivering brick for defendant J. J. Schano Company to the Hammel site for a construction project of defendant contractor, Scotti & Sons, Inc. Defendant Samuel Marini, the project's brick subcontractor, had ordered the brick pursuant to the obliga-tions of his subcontract with defendant Scotti.

Guglielmo's administrator filed this action. At the close of the plaintiff's case, all of the defendants except Marini, Scotti & Sons, Inc. and West Penn Power Company were dismissed pursuant to an oral stipulation entered into by all of the parties.

After trial the jury answered interrogatories so as to find that the defendants West Penn Power Company and Scotti & Sons, Inc. were jointly liable for the decedent's death, and that the defendant Samuel Marini did not share in that liability.

After further deliberation on the question of damages, the jury returned a verdict in favor of the plaintiff and against defendants West Penn Power Company and Scotti & Sons, Inc. Both of these defendants have filed post trial motions, which are the subjects of this opinion.

## DECISION

Scotti has moved for judgment n. o. v. pursuant to F.R.Civ.P. Rule 50(b) for the following reasons:

1. The evidence in this case clearly showed that Scotti & Sons, Inc. was the general contractor for the erection of the building involved in this case.

2. Under the evidence in this case, it was shown that the decedent was working for J. J. Schano Company, one of the contractors in this case.

3. There was no evidence of any kind to indicate that the decedent occupied any other status than that of an employee of J. J. Schano Company.

4. Under the evidence, it was proven that Scotti & Sons, Inc. had secured Workmen's Compensation under a policy of insurance with Pennsylvania Manufacturers Association Insurance Company.

5. That under the Workmen's Compensation Act of Pennsylvania, 77 P.S.

1, et seq., it is provided that the General Contractor who has secured Workmen's Compensation enjoys the immunity given to an employer, which immunity includes immunity from tort liability.

 Scotti's motion for judgment n. o. v.[1] raises a serious procedural problem in that Rule 50(b) of the Federal Rules of Civil Procedure states in part that:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict.

By its terms, this rule clearly indicates that a party must move for a directed verdict at the close of all the evidence in order to preserve its right to move for judgment n. o. v. after the verdict. Massaro v. United States Lines Co. (C. A. 3 1962) 307 F.2d 299. The rule was designed to help streamline and implement the procedural niceties that are necessary to insure that a judgment n. o. v. does not violate a party litigant's Seventh Amendment right to a jury trial. Rule 50 accomplishes this function by allowing that when a motion for directed verdict is denied, the jury may then render a verdict which is subject to the judge's later redetermination under Rule 50(b) of the legal questions raised and reserved by the defunct motion for a directed verdict. See Moore's Federal Practice ¶¶ 50.08, 50.09, 50.12.

In the present case the record indicates that Scotti chose not to move for a directed verdict at the close of all the evidence, thereby foreclosing any consideration of its request for judgment n. o. v. When the last remaining defendant had closed his case, Mr. Rea, counsel for Scotti & Sons, Inc., approached the bench along with counsel for the other parties and the following discussion occurred:

THE COURT: I suppose you don't have your requests? Do you have them?

MR. REA: I just have them verbally, I only have two points plus a motion for a directed verdict. There are just two points.

THE COURT: Well, let's take the motions now.

MR. REA: I don't have a motion. I have a written point for binding instructions plus two points.

\* \* \* \* \* \*

MR. REA: I am going to submit a request, a point that the Court charge that a person is required to see that which can be seen. I honestly forget the specific legal words for that and it is out of cases that you cannot be heard to say that such plainly visible thing, you have to see that thing which is plainly there to be seen.

\* \* \* \* \* \*

MR. REA: The only other point is and I would ask how you are going to charge in regard to what the standard of care is of V. Scotti or the standard of care of Marini or the standard of care of the Power Company? TT 431–432.

We are forced to conclude that this language cannot be construed in any manner that would give it the resemblance of a legitimate motion for a di-

---

1. This court is of the opinion that the procedural device of judgment n. o. v. cannot be used to examine the sufficiency of the evidence on an issue that was never submitted for jury consideration. As indicated below the question of Scotti's statutory employer defense was removed from the case by Scotti's counsel before the case went to the jury.

rected verdict. We note that Scotti did subsequently submit a written point for charge, which stated that:

> Under all the evidence, the verdict must be in favor of Scotti & Sons, Inc.

Any argument to the effect that this point for charge constitutes a motion for a directed verdict, as required by Rule 50(b) is disposed of by the holding in Eisenberg v. Smith, (C.A. 3 1959) 263 F.2d 827. The Eisenberg court relied on that portion of Rule 50(a) which mandates that "A motion for a directed verdict shall state the specific grounds therefor" in order to hold that a requested instruction directing a verdict on the law and the evidence was not precise enough to qualify as a motion for a directed verdict within the meaning of Rule 50(b). See also Budge Manufacturing Co. v. United States, (C.A. 3 1960) 280 F.2d 414.

■ We find that Scotti did not move for a directed verdict at the close of all the evidence, as required by Rule 50(b), and this omission bars consideration of its motion for judgment n. o. v. Nonetheless, we discuss, albeit gratuitously, Scotti's contention that it was Guglielmo's statutory employer and as such is entitled to judgment n. o. v.

■■ In order to grant judgment n. o. v. (a situation which normally implies that a jury has considered a particular issue and has found against the moving party), the court, without weighing the credibility of the evidence must determine that the only reasonable conclusion as to the proper judgment favors the n. o. v. movant. This standard is the same standard applicable to motions for directed verdict. Downey v. Union Paving Co., (C.A. 3 1949) 184 F.2d 481. Using these n. o. v. standards, we must ask whether or not Scotti has shown that it is entitled to the statutory employer's defense. The burden of proving employer-employee relationship is upon the party asserting the statutory employer defense. Stipanovich v. Westinghouse, 210 Pa.Super. 98, 231 A.2d 894 (1967).

There are five elements under § 203 of Pennsylvania Workmen's Compensation Act, 77 P.S. § 52, all of which an employer must show to establish that he is a statutory employer and thus avoid common liability. These five elements are:

(1) An employer who is under contract with an owner (herein Scotti, Inc., hired by owner Hammel);

(2) Premises occupied by or under the control of such employer (herein the Hammel building site controlled by Scotti, Inc., the prime building contractor);

(3) A subcontract made by such employer (herein Scotti argues that it subcontracted with Marini, who in turn sub-subcontracted with J. J. Schano Co.);

(4) Part of the employer's regular business entrusted to such subcontractor;

(5) An employee of such subcontractor (herein Scotti argues that Salvatore Guglielmo was its servant or employee via the alleged Scotti-Marini-Schano chain of subcontracting relationships.) Stipanovich, supra.

For the purposes of this discussion, to dispose of Scotti's contention, we will only review the record as it relates to (5) above—the issue of Guglielmo's status vis-a-vis J. J. Schano Company. The relevant evidence is as follows:

(1) Plaintiff's exhibits 11, 12 and 13 are photographs which reveal that the 1958 White truck involved in this accident bears "Schano" markings.

(2) At trial counsel for Scotti read into the record a portion of plaintiff's pretrial narrative, which stated that:

> On the day of the accident the decedent was working for J. J. Schano Company and was delivering brick ordered by Sam Marini, the brick ma-

sonry contractor, who was working on the erection of the building on the Hammel premises.

\* \* \* \* \* \*

On the morning in question decedent left the J. J. Schano Company with a load of brick stacked on pallets and he arrived at the Hammel premises at approximately 8:00 a. m. with the load of brick. The decedent had unloaded a pallet of brick and had moved closer to the scaffolding erected to aid in the construction of the building along the north wall at the request of a bricklayer employed by Sam Marini. TT 385.

(3) Mrs. Guglielmo testified that her husband "had a trucking business." TT 301.

(4) Mrs. Guglielmo testified that her husband's trucking business was a sideline rather than his regular job. TT 301–302.

(5) Mrs. Guglielmo stated that her husband worked for brick firms other than J. J. Schano. TT 301.

(6) Testimony indicates that decedent put the boom on the truck by himself. TT 303.

(7) Testimony indicates that Mr. Guglielmo owned this 1958 White truck.

(8) Testimony indicates that Mr. Guglielmo was supposed to have delivered this particular load of brick earlier than the day of the accident, but postponed delivery. TT 302.

(9) Plaintiff's exhibits 19, 20 and 21 (income tax returns for years 1966, 1967 and 1968) indicate that the decedent regarded his trucking enterprise as a business and utilized all the tax benefits available to a businessman.

(10) Mrs. Guglielmo indicated that her husband made all of his own truck repairs. TT 305.

■ The evidence set forth above supports the view that Mr. Guglielmo was an independent contractor in that he exercised independent discretion with regard to the care and handling of his equipment, the number of companies that he would haul for, and the time as well as the manner of his deliveries. The evidence on this issue is certainly not so favorable to Scotti's position that a reasonable person could conclude only that Guglielmo was a servant of J. J. Schano Company. In fact, on balance, we might well conclude that the evidence favors a finding that Guglielmo was an independent trucking contractor. In any event, judgment n. o. v. is not appropriate on this issue.

■ Going beyond our narrow holding set forth above, we are of the further opinion that counsel for Scotti, Inc. removed the workmen's compensation defense from this case for all purposes prior to its submission to the jury. The touchstone for this position is Magenau v. Aetna Freight Lines, 360 U.S. 273, 79 S.Ct. 1184, 3 L.Ed.2d 1224 (1959), a case wherein the United States Supreme Court held that Pennsylvania procedure not withstanding, federal procedure requires that factual disputes inherent in a Pennsylvania workmen's compensation defense be submitted to the jury.

In the early stages of this case, Scotti apparently intended to present a workmen's compensation defense to the jury. Scotti pleaded this defense at paragraph 6 of its answer to the Guglielmo complaint. At pages 1 and 2 of the pretrial narrative which he filed in this case, counsel for Scotti stated that:

V. Scotti & Sons, Inc. will further take the position that it was the statutory employer under the terms of the Workmens Compensation Act of Pennsylvania, and that its liability is limited by reason of this Act. Although V. Scotti & Sons, Inc. must remain as a party to this case, no recovery may be had because of the statutory employer defense.

\* \* \* \* \* \*

In addition, witnesses may be called to show the contractual relationship

between the various parties, in order to support the statutory employer defense.

Counsel for Scotti also mentioned this defense in pretrial conference held in this matter before Judge Edward Dumbauld on October 28, 1971. Finally, on the morning of April 17, 1972, at another pretrial conference before Judge Ralph F. Scalera, counsel for Scotti made it a matter of record that Scotti held a workmen's compensation policy at the time of Mr. Guglielmo's accident.

Nonetheless, as a result of various conferences and Scotti's tactical handling of the later stages of the trial, we came to a clear understanding that Scotti had dropped the statutory employer's defense for purposes of trial and that Scotti would use that defense only for any protections it might afford in separate execution and attachment proceedings, if such should become necessary.

Furthermore, an examination of the record reveals that Scotti chose not to present its statutory employer's defense during this trial. First, Scotti's oral motion for a directed verdict did not include the statutory employer's defense as grounds. See transcript of proceedings at trial, pp. 307-308 (motion at close of plaintiff's case.) See also p. 431, which indicates that Scotti did not make a motion for a directed verdict at the close of all the evidence. In fact, in his motion at the close of plaintiff's case, counsel for Scotti actually argued that the evidence showed that Mr. Guglielmo was an independent contractor. As discussed later in this opinion, under Pennsylvania law an independent contractor cannot be a statutory employee.

Secondly, at the close of all the evidence, Scotti submitted a handwritten point for charge, which stated that:

4. The defendant Scotti owed a duty to the decedent, an independant [sic] contractor, to warn him of any dangerous condition of which he had knowledge.[2]

In its insistence that Guglielmo was an independent contractor, request #4 is inconsistent with Scotti's post-trial effort to raise a workmen's compensation defense. Gailey v. State Workmen's Ins. Fund, 286 Pa. 311, 133 A. 498 (1926).

Having come, in light of the above-recited facts, to understand that the statutory employer defense was no longer before it, this court did not submit to the jury the factual issues inherent in such a defense. The record reveals that Mr. Rea, counsel for Scotti, did not object to the charge and did not request a supplementary charge submitting those statutory employer issues to the jury. At the close of the court's charge to the jury, the following colloquy took place:

Gentlemen, if there are any suggestions, corrections, additions or objections to any of the instructions I will consider them at sidebar. I also want to indicate for the record that I have written on the special requests provided to me before argument of counsel my disposition of each and have made those part of the record.

Do you wish to come to the bench?

(Whereupon, counsel approached the bench.)

THE COURT: Mr. Weaver?

MR. WEAVER: Your Honor, I would just note a general objection to the charge, is all.

THE COURT: Mr. Rea?

MR. REA: I have no exceptions.

■ F.R.C.P. Rule 51 declares that "no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." A party's failure to request that issues omitted from the court's charge be sub-

---

2. The request was denied. None of the other requests dealt with the statutory employer defense.

mitted to the jury will leave that party without a remedy. In Cafasso v. Pennsylvania R. R. Co. (C.A.3d 1948) 169 F. 2d 451, the court held that where the plaintiff made no request that the trial judge instruct the jury with respect to any theory of negligence other than the theory actually submitted to the jury, and did not object to the failure to give such instructions, the omission cannot be assigned as error on appeal. In the case at bar, as in Cafasso, the court did not submit the law controlling a legal theory which counsel argued should have been in the case. In the absence of a seasonal objection to the proffered charge, neither the Cafasso trial court nor the appeal court would assign the omission as error.

Stilwell v. Hertz Drivurself Stations, Inc. (C.A. 3 1949) 174 F.2d 714, speaks even more forcefully on this subject. In Stilwell the defendant pleaded the statute of limitations, but his motion for a directed verdict made no mention of that defense and he did not object to a charge which did not submit that defense to the jury. The Stilwell court cited Rule 50 and 51 of the Federal Rules of Civil Procedure as the basis for ruling that the statute of limitations question had not been preserved for review on appeal. The similarity of Stilwell and the instant case is too distinct to require further comment.

We conclude that Scotti intended an abandonment and waiver of its right to present an affirmative workmen's compensation defense. In finding such an irrevocable waiver, we rely on Magenau v. Aetna Freight Lines, supra, and on F.R.C.P. Rule 12, subsections (g) and (h), which clearly express policies favoring waiver and forfeiture of defenses as aids to the orderly administration of the litigation process. See 2A Moore's Federal Practice ¶¶12.22–12.23. Rule 12 has been interpreted so that subject to the exceptions of subsection (h), any defense that is not raised either by motion or in the answer or reply is waived. J.

F. White Contracting Co. v. New England Tank Industries of New Hampshire, Inc. (C.A. 1st 1968) 393 F.2d 449; Bethlehem Steel Corp. v. Devers (C.A. 4th 1968) 389 F.2d 44; Varone v. Varone (C.A. 7th 1968) 392 F.2d 855; Abramson v. Boedeker (C.A. 5th 1967) 379 F.2d 741, cert. denied (1967) 389 U.S. 1006, 88 S.Ct. 563, 19 L.Ed.2d 602; United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO Local 102 v. Lee Rubber & Tire Corp. (D.N. J.1967) 269 F.Supp. 708, affirmed (C.A. 3d 1968) 394 F.2d 362.

■ While we note that this defense was properly pleaded, we believe that if a party can waive an affirmative defense by virtue of a technical pleading deficiency, then it follows *a fortiori* that a party can waive a pleaded defense by conduct which indicated to the court and to other counsel that such a defense is no longer in the case, (e. g., not moving for a directed verdict on grounds of that defense, requesting a binding charge that would be completely inconsistent with the facts necessary to make out such a defense and acquiescing to the court's charge which did not submit the factual issues of such a defense to the jury).

The case of Goehring v. Diamond Milling Co., Inc. v. Goehring, 461 F.2d 77 (3d Cir. 1972), lends added credence to our waiver finding in the present case. In Goehring an auto carrying a husband-driver and wife-passenger collided with a truck owned and operated by Diamond Milling Co., Inc. The wife survived with injuries but the husband was killed. The wife and the husband's estate sued Diamond, which responded by joining the estate as third-party defendant. Prior to trial the decedent's estate obtained a joint tortfeasor's release from the surviving wife for $20,000. After trial the jury found both Diamond and decedent-husband negligent in causing injuries to the wife and returned a verdict of $10,000 in her favor. When counsel for defendant Dia-

mond asked that the verdict be molded, counsel for the surviving wife advised the court that the release would be challenged in a state court proceeding. The trial judge refused to mold the verdict and Diamond appealed. In his opinion Judge Adams observed that the estate of the deceased husband had relied on the release rather than presenting an active defense during trial. Judge Adams then held that the state proceedings attacking the release could deprive the decedent's estate of its day in court—a clearly unjust result. The court remanded to the trial judge with instructions to mold the verdict in accordance with Diamond Milling Co., Inc.'s request. The court did not reach the Erie R. Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) issue but noted that its decision would have been the same under federal or Pennsylvania law. The facts and circumstances in the present case support a waiver finding even more strongly than the facts and circumstances of Goehring, supra. Actions by Scotti's lawyer lulled the plaintiff into the belief that the statutory employer defense was not before this court and, as a result, plaintiff and the other parties did not actively make a record on that issue. To examine that issue now would deprive those parties of their day in court as to that issue and would severely prejudice them.

■■ The sequence and methods of presenting defenses are matters of procedure and as such are controlled by federal law, and this court is of the opinion that the policy of the federal law requires that litigants bring forth all the relevant issues at the time of trial despite state procedural requirements which mandate otherwise.

■ The balance of Scotti's motion requests a new trial on the basis of the following argument:

1. The decedent was guilty of contributory negligence, as a matter of law.

2. The decedent was guilty of assuming the risk of harm, as a matter of law.

3. The verdict in this case was inconsistent, and cannot be supported in law, in that either the West Penn Power Company was guilty of negligence, or Scotti & Sons, Inc. was guilty of negligence, but only one of these defendants' acts could have been the proximate cause of the plaintiff's death. Accordingly, judgment cannot be supported against both West Penn Power Company and Scotti & Sons, Inc.

The record does not support the position set forth in paragraphs 1 and 2 above and reveals evidence from which the jury could have found that the decedent was not negligent and that he did not assume the risk.

Pennsylvania law clothes every decedent with the presumption of due care. In Keasey v. Pittsburgh & L. E. R. R. Co., 404 Pa. 63, 170 A.2d 328 (1961), the court said that in the absence of evidence to the contrary "Every rule that one can conceive which is designed to protect and preserve human life is presumed to have been respected by the decedent because although it is inevitable that everyone must eventually turn in his bat and glove, no one actually wants to hasten the end of the ball game."

Despite the size of the trial record in this case, very little testimony touches on the circumstances of the accident. Testimony by Messrs. Damy and Mahoney (carpenters at the jobsite on the day of the accident) indicated that although the wires were visible, they might not be noticed under varying sets of circumstances. Although both men testified that the decedent was warned orally that the wires were present, other testimony concerning the decedent's reaction to the warning and the noise level prevailing at the time of the warning supports the inference that the warning was not heard. TT 70–71, 90–95, 105–108, 142–143, 160–162. The record does not reveal

any testimony indicating that the decedent was actually aware of the wires, or that he was aware of the danger they posed.

■■■■ The position set forth in paragraph 3 above is without merit and, in fact, Scotti's brief does not develop it in any way. We understand that breaches of separate duties may set in motion separate chains of events which will eventually act together or concur to cause an injury. See 27 P.L.E. Negligence § 78 Concurrent Causes. By way of special interrogatories the jury indicated that it found such concurrent causation in this case. We are not aware of any inconsistency with that finding. The record supports the jury's verdict against Scotti. Therefore, a new trial is not in order.

Counsel for West Penn Power Company asks this court to enter judgment n. o. v. in its favor on the grounds that according to the decision in Dunnaway v. Duquesne Light Co. (C.A. 3d 1970), 423 F.2d 66, the evidence introduced at this trial is insufficient to charge West Penn Power Company with actual or constructive notice that cranes were being used or would be used in close or dangerous proximity to its power lines and in the absence of such knowledge, West Penn had no duty to protect such a crane.

In Dunnaway, supra, the court reviewed the record and found that the power company

. . . had no actual knowledge of the crane's actual or prospective use immediately beneath its wires. The crane had not been in position under the lines a sufficient length of time to have been discovered in ordinary course of inspection or observation. *Ibid.* p. 69.

The court then addressed itself to the question of whether the power company "should have anticipated that the crane would be used under the lines at or about the time of the accident." *Ibid.*

The court noted that the power company knew that cranes were being used in and around the construction area close to its wires, and that the bridge construction project would pass immediately below its lines. Nonetheless, citing Reed v. Duquesne Light Co., 354 Pa. 325, 47 A.2d 136 (1946), and Stark v. Lehigh Foundries, Inc., 388 Pa. 1, 130 A.2d 123 (1957), as authority, the Dunnaway court held that knowledge that cranes are being used in the general area of power lines is not enough to charge a power company with knowledge that those cranes would be used in dangerous proximity to the lines.[3] The rationale offered for this holding is that courts should not require power companies to keep the land under their wires under constant surveillance.

Finally, the Dunnaway court noted that even if the power company

. . . could have anticipated that a crane might at some time be used to pour the southern portion of the bridge [under the high tension wires], it had no notice when this would occur. This case does not present the situation where a crane has been proceeding for some time along a continuous path toward the electric line. Dunnaway, supra, 423 F.2d p. 70.

On the basis of the reasoning set forth above, the Dunnaway court reversed the judgment of the lower court and directed that the power company's motion for dismissal despite the verdict be granted.

■■■■ In the instant case, plaintiff's evidence relative to notice indicated that a large crane had been used at the jobsite on April 24 or 25, 1968 and that a West Penn Power official was summoned to insure the safe use of the crane. (TT 133, 191, 198, 244). Other uncontradicted testimony in the case indicates that decedent arrived on the jobsite at 7:15 a. m. on the day of the accident (TT 59) and that he positioned his

---

3. The court also noted that an alternate method of construction not requiring cranes could have been used in the danger area.

vehicle at 7:55 a. m. (TT 90), and, finally, that the fatality occurred at 8:05 a. m. (TT 95). Photographic exhibits and testimony of several witnesses indicate that decedent could have unloaded his truck away from the wires. (TT 69, 358, 361.) This court agrees that the facts of Dunnaway, supra, are closely similar to the facts in the case at bar. Decedent's placement of his truck was temporary and occurred minutes before the accident. The record does not reveal any evidence to the effect that West Penn Power Company knew or should have known that his truck would be so located on the day of his death. A power company does not have the duty to keep the land under its lines under constant surveillance. Reed v. Duquesne Light Co., supra. Absent such surveillance we fail to understand how West Penn could have known that Mr. Guglielmo's truck would be parked dangerously close to the power lines. Notice is a part of plaintiff's prima facie case with respect to West Penn Power Company. In the absence of competent evidence bearing on this element of plaintiff's case, we must grant West Penn Power Company's motion for judgment n. o. v.

An appropriate order will be entered.